**John HALPIN, Plaintiff–Appellee,**

v.

**W.W. GRAINGER, INCORPORATED, Defendant–Appellant.**

**No. 91–1153.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1991.

Decided May 6, 1992.

David J. Bressler, Timothy McLean (argued), Rooks, Pitts & Poust, Wheaton, Ill., for plaintiff-appellee.

Harry Sangerman (argued), Timothy L. Moorehead, McDermott, Will & Emery, Chicago, Ill., Henry F. Galatz, W.W. Grainger, Inc., Skokie, Ill., for defendant-appellant.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

John Halpin's total disability benefits were terminated by W.W. Grainger, Inc. (Grainger), his employer and the administrator of the long-term disability plan that covered Mr. Halpin. Mr. Halpin brought an action under ERISA challenging Grainger's termination of his benefits and was granted summary judgment by the district court. Grainger now appeals. For the following reasons, we affirm.

# I

## BACKGROUND

### A. *Facts*

Grainger, an electrical equipment supplier, hired John Halpin in 1970 as a full-time outside sales representative. In December 1982, after twelve years of service, Mr. Halpin suffered an anterior wall myocardial infarction. On April 19, 1983, Mr. Halpin underwent a left ventricular aneurysm re-section. He continues under medication for coronary artery disease. In September of 1984, Mr. Halpin was awarded total disability insurance benefits by the Social Security Administration. Mr. Halpin also received total disability benefits under Grainger's long-term disability plan (Plan). In the spring of 1988, Thomas L. Jacobs & Associates (TLJ), which had been hired by Grainger to administer the Plan, notified Mr. Halpin that it was reviewing his eligibility for benefits and asked him to have his doctor fill out a questionnaire which it provided. His doctor did so. On May 30, 1988, TLJ notified Mr. Halpin that his disability payments were terminated because he no longer met the Plan's definition of total disability. Mr. Halpin appealed the termination, and Grainger denied his appeal. Mr. Halpin then brought this action for reinstatement of benefits.

### B. *District Court Proceedings*

In the district court, the parties filed cross-motions for summary judgment. The district court determined that Grainger's termination of Mr. Halpin's benefits should be reviewed under the arbitrary and capricious standard. It based this determination on the discretionary authority which the Plan gave to Grainger to "determine all questions arising in the administration, interpretation and operation of the Plan." The district court found that there was no conflict of interest which would mandate a greater degree of scrutiny.

The district court then determined that the termination of benefits had been arbitrary and capricious: Grainger had not "articulated an explanation for the decision that takes into account all the relevant facts," gave "no explanation concerning why it did not consider rehabilitative employment together with vocational training, or why it did not make an effort to determine whether a suitable job offer would be

made to plaintiff or whether ... employers are unlikely to risk employing a person of plaintiff's age and condition." Memorandum Opinion and Order, No. 89 C 8700 at 9–10, 1991 WL 1710 (Jan. 4, 1991). The district court granted summary judgment to Mr. Halpin and ordered retroactive reinstatement of his benefits.

## II

## ANALYSIS

### A. *Standard of Review*

In reviewing the district court's decision to grant summary judgment, our task is to review de novo the record and the controlling law.[1] *Becker v. Tenenbaum–Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). A motion for summary judgment is "not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ As noted above, the district court determined that the Plan gave the administrator discretionary authority to determine eligibility and that, therefore, the adminis-

trator's decisions were to be reviewed under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Mr. Halpin argues that Grainger did not have discretion under the Plan to construe ambiguous terms and that therefore, under *Bruch*, Grainger's determinations under the Plan should have been reviewed de novo. *See id.* It is plain, however, under our caselaw, that the language of the Plan gave discretion to Grainger to interpret the Plan. The Grainger Plan provides that the administrator "shall determine all questions arising in the administration, interpretation and operation of the Plan." This language is very close to the language of the plan under review in *Foster McGaw Hospital of Loyola University v. Building Material Chauffeurs, Teamsters & Helpers Welfare Fund of Chicago*, 925 F.2d 1023, 1026 (7th Cir.) (plan giving trustees authority to "determine all questions arising in the administration, interpretation and application of the Health and Welfare Plan, including questions of eligibility ..." required deferential review), *cert. denied*, —— U.S. ——, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991).[2]

### B. *Statutory Procedures and Requirements for Denial of Benefits*

■ ERISA sets certain minimum requirements for procedures and notification when a plan administrator denies a claim for benefits. In a nutshell, ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for "full and fair review" by the administrator.

---

1. To the extent that we do not specifically adopt all the grounds cited by the district court, we note that an appellate court may affirm on any ground that finds support in the record. *Roland v. Langlois*, 945 F.2d 956, 962 (7th Cir. 1991); *DeBruyne v. Equitable Life Assur. Society of the United States*, 920 F.2d 457, 464 n. 10 (7th Cir.1990).

2. As we have noted in earlier cases, there is some disagreement among the courts as to whether the plan interpretations of an administrator with such discretionary authority are reviewed under the "arbitrary and capricious"

standard or under the "abuse of discretion" standard. *See Lister v. Stark*, 942 F.2d 1183, 1188 (7th Cir.1991) (citing cases). Moreover, *Bruch* has left unresolved the standard of review for an administrator's factual determinations. *See Pierre v. Connecticut General Life Ins. Co.*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting from denial of certiorari) (citing *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176 (3d Cir.1991)); *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210 (4th Cir.1990); *Petrilli v. Drechsel*, 910 F.2d 1441 (7th Cir.1990). We need not resolve this issue in this appeal.

Section 1133, 29 U.S.C. § 1133, reads as follows:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The regulations promulgated by the Secretary require that the initial notice of a claim denial contain

> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case. As we noted in *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir.1983), "[d]escribing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R. § 2560.503–1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record."

The regulations also require plans to provide an internal appeals process: every plan must "establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable op-portunity to appeal a denied claim to an appropriate named fiduciary, and under which a full and fair review of the claim and its denial may be obtained." 29 C.F.R. § 2560.503–1(g)(1). The review procedure must allow a claimant or his representative to "(i) Request a review upon written application to the plan; (ii) Review pertinent documents; and (iii) Submit issues and comments in writing." *Id.*

The regulations also require that the decision on review be made within 60 days of the appeal, or in special circumstances, within 120 days. The notice of the decision on review must include specific reasons and specific references to the pertinent plan provisions on which the decision is based. 29 C.F.R. § 2560.503–1(h).

■ Our case law, which is in accord with that of the other circuits, makes clear that these regulations are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial. Noted Judge Wood for the court in *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521 (7th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987):

> [T]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Id.* at 534 (quoting *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858 n. 5 (3d Cir.1983)); *accord Wolfe*, 710 F.2d at 391–92. These requirements enable the claimant to prepare adequately "for any further administrative review, as well as appeal to the federal courts." *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir.1991) (quoting *Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir.1981)).

In determining whether a plan·complies with the applicable regulations, substantial compliance is sufficient. *See Brown*, 797 F.2d at 536; *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 892 (10th Cir.1988). "Every procedural defect will not upset a trustee's decision." *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir.1983). However, a procedural error can be a "significant error on a question of law, erroneously interpreting and applying section 1133," and, if it is, "fairness requires that [the administrator's] decision be set aside." *Id.*

### C. *Application to this Case*

The application of these standards to a particular disability situation is necessarily a fact-intensive inquiry. The purpose of the statute and regulations must be our guide: was the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.

#### 1.

Before this court, as before the district court, Mr. Halpin focuses on the review stages of Grainger's benefits termination. However, an understanding of the process that led to the initial decision to terminate is helpful in evaluating the precise issues before us. Accordingly, before addressing the specific points raised by Mr. Halpin on appeal, we shall set forth, in some detail, the earlier stages of the termination process initiated by Grainger.

**3.** Under the terms of the Plan, Grainger is the administrator and "shall determine all questions arising in the administration, interpretation and operation of the Plan, and in so doing may consult with, and rely upon, such legal, actuarial or medical opinions as it deems necessary and proper." Any determination made by Grainger is "conclusive and binding." The Plan requires Grainger to "keep records of its proceedings and decisions."

The Plan allows Grainger to "delegate to a ... qualified third party any or all of the Corporation's administrative responsibilities under the Plan, including, but not limited to, those responsibilities concerning payment of benefits and expenses and the determination of whether a person is eligible for benefits."

Early in 1988, TLJ decided to review Mr. Halpin's continuing eligibility for long term disability benefits.[3] At TLJ's request, Mr. Halpin had his own cardiologist, Dr. Donald Riff, complete a questionnaire provided by TLJ. The questionnaire was in a multiple choice format and provided no space for narrative explanation or elaboration. On this questionnaire, Dr. Riff indicated that Mr. Halpin would never be able to return to work at any occupation for which he was reasonably well qualified by education, skill, and past experience. TLJ then arranged to have Mr. Halpin examined by Dr. Mark Upton, also a cardiologist. Dr. Upton concluded that Mr. Halpin was "totally and permanently disabled from performing his previous occupation as a sales representative," but stated that he "s[aw] no reason why [Mr. Halpin] could not perform sedentary office work and would consider him a good candidate for vocational rehabilitation." Dr. Upton also noted, however, that "Mr. Halpin might find difficulty obtaining new employment because of his age and cardiac history. A company might not be willing to take a risk, especially since health insurance would be expensive and difficult for him to obtain." R.1 Ex. D.

On May 23, 1988, TLJ sent Mr. Halpin a letter announcing the termination of his long-term disability benefits. The letter referred to the Plan's definition of total disability, and summarized the information on the questionnaire submitted by Dr. Riff and the report of Dr. Upton. The letter stated:

> The exact scope of Grainger's delegation to TLJ is not clear. However, Nancy Milnor, Grainger's Compensation and Benefits Administrator, testified that she had the "final say" in decisions to deny or terminate benefits, and in a letter to Mr. Halpin, TLJ's attorney Robert Miller stated that TLJ acted in an "advisory capacity" to Grainger. In any case, even though the Plan permits delegation, the trustee or administrator remains responsible under ERISA for insuring that there is a full and fair review of a decision denying a claim. *See Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885 (10th Cir.1988); 29 U.S.C. §§ 1133(2), 1132(d).

In reviewing your claim, we requested that you submit a questionnaire completed by your attending physician.... Dr. Riff indicated you could never return to work, but you have had no surgeries in the past 12 months and no surgeries were recommended in the future. Your latest E.C.G. studies revealed remote myocardial infarction and inconclusive ST–T changes and/or dysrhythmia you have not had any x-rays in the past 12 months and your pulmonary and systemtic [sic] circulation were normal. You are noted as having a Class 2 functional capacity by the American Heart Association's functional classification.

In order to further clarify the situation, we arranged to have you examined by Dr. Mark T. Upton, a board certified Cardiologist. Dr. Upton indicated you were disabled from performing your own occupation as a salesman, but you were not totally disabled from performing sedentary work. Based on your age of 54 years and your education of 2 years college, we have determined that you no longer satisfy the total disability provisions of the plan as stated above.

R.1 Ex. F.

The letter set forth the procedure for review, and told Mr. Halpin that he "should state the reason you believe your claim should have been treated differently and you should include any facts or pertinent information you consider important."

This letter failed to meet the regulatory requirements, because it did not give "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503–1(f). The additional material or information necessary was additional medical evidence of total disability. Philip Schumer, the TLJ associate who later reviewed Mr. Halpin's appeal, noted on his referral sheet that no additional medical information had been received to substantiate Mr. Halpin's claim, and he rec-ommended denial of the appeal. Similarly, Barbara Peele, who reviewed Schumer's review, wrote at the bottom of the referral sheet that Schumer should "write attorney and give him an opportunity to submit meds." Our independent examination of the record reveals an internal TLJ memorandum, apparently initialed by Schumer, that indicates that he spoke with Mr. Halpin's attorney and was told no additional medical evidence would be submitted.[4] Neither party invited our attention to this document in its brief. Notably, the document does not indicate that TLJ ever specified what sort of medical evidence was necessary to cure the perceived deficiency in Mr. Halpin's case. Clearly, a blanket request for "additional medical information" would not have satisfied the regulatory requirements. In *Wolfe v. J.C. Penney*, 710 F.2d at 393, we held that to satisfy the requirement of a description of any additional material or information necessary for the claimant to perfect the claim, the letter would have to specify the kind of additional medical information needed.

2.

■ Accordingly, as we now turn to Mr. Halpin's specific contentions concerning the review process, it is important to note that the earlier process appears to have been seriously flawed. Consequently, Mr. Halpin's ability to present an effective case in the review process was no doubt significantly hampered at the outset. Nevertheless, Mr. Halpin filed a written appeal for review as required by the terms of the Plan. In that appeal, Mr. Halpin contended that, in deciding to terminate the benefits, Grainger had disregarded the opinion of Mr. Halpin's own physician, Dr. Riff, that Mr. Halpin would never be able to return to work at "any occupation for which he was reasonably qualified by education, training and experience." He also submitted that, in its reliance on the evaluation of Dr. Upton, a physician retained by Grainger to

---

**4.** In a letter dated November 29, 1988, when Mr. Halpin's appeal was still pending, Mr. Halpin's attorney did alert Grainger to the fact that the Social Security Administration had recently made a redetermination that Mr. Halpin's disability was continuing. Grainger appears not to have taken this redetermination into consideration.

examine Mr. Halpin, Grainger ignored the implications of Dr. Upton's statement that Mr. Halpin was a "good candidate for vocational rehabilitation." Mr. Halpin asserts that this statement indicated not that he was presently able to work at an occupation for which he was reasonably qualified, but that with vocational rehabilitation he might become so in the future. According to Mr. Halpin, under the Plan's definition of total disability, a present ability to work would be necessary to disqualify Halpin from receiving benefits. He also noted that Grainger had made no determination that jobs actually existed and were available to a man of Mr. Halpin's age and physical condition, and had not taken into consideration Dr. Upton's opinion that it might be difficult to find an employer willing to hire him, given his age, his cardiac history, and the expense and difficulty of obtaining medical insurance for him.

TLJ's Benefit Review Committee recommended that Grainger deny the appeal, and Grainger did so. The denial of Mr. Halpin's appeal was announced to him in a letter to his attorney dated April 17, 1989, from Grainger's Compensation and Benefits Administrator, Nancy Milnor:

Dear Mr. McLean:

We have reviewed the documentation provided by our administrator, Thomas L. Jacobs & Associates, regarding the appeal for LTD benefits for John Halpin. As stated in the LTD Plan Documents, total disability is defined as:

"(a) due to sickness or accidental bodily injury, (i) is completely unable to perform any and every duty pertaining to his occupation with his employer, and (ii) after monthly benefits have been paid for 24 months is completely unable to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience."

Based upon this definition of total disability and the review of the claim by our administrator, Thomas L. Jacobs, we concur with their decision that Mr. Halpin no longer satisfies the total disability provisions of the Plan as stated above. Therefore, benefits under the LTD Plan were terminated effective May 31, 1988.

Should you have any further questions relative to this matter, please contact Mr. Hank Galatz at this office.

Sincerely,

Nancy M. Milnor

Compensation and Benefits Administrator

On May 5, Mr. Halpin's attorney wrote to Milnor requesting "specific reasons" for the denial of Mr. Halpin's appeal. In reply, Milnor sent Mr. Halpin's attorney a letter saying that he would find the specific reasons set out in a letter from TLJ to Grainger. TLJ's letter, which Milnor enclosed with her own, read as follows:

Dear Ms. Milnor:

We have completed our review of Mr. Halpin's ERISA Appeal of his terminated LTD claim.

As you are aware, the Plan states that benefits are payable provided the claimant is totally disabled within the meaning of the Plan. In pertinent part, the plan defines total disability as follows:

"... inability of the employee to engage in any gainful employment or occupation in which the employee is reasonably qualified for by training, education, or experience irrespective of whether any such employment or occupation is available within the company or offered by the company." [5]

In our letter of May 23, 1988, to John Halpin we explained that no objective

---

5. The provision reads:

1.17 "Total Disability"—an Employee (a) due to sickness or accidental bodily injury, (i) is completely unable to perform any and every duty pertaining to his occupation with his Employer and (ii) after Monthly Benefits have been paid for 24 months is completely unable to engage in any and every gainful occupation for which he is reasonably fitted by education, training or experience; and (b) is not engaged in any gainful occupation and is not confined in a penal institution or other house of correction as a result of conviction for a criminal or other public offense. The provision is correctly quoted in Grainger's brief.

medical evidence was contained in his claim to substantiate total disability from any gainful occupation. A copy of this letter is enclosed for your convenience of reference. Furthermore, we stated that based on his age, education and his 2 years of college education he was reasonably qualified to perform a gainful sedentary occupation.

Mr. Halpin through his attorney Tim McLean has appealed our termination of benefits based upon his medical condition and the inability to perform any occupation for which he is reasonably qualified with his current physical restrictions. We requested a vocational assessment from ConServCo based upon Mr. Halpin's education and work experience. ConServCo cited several positions which Mr. Halpin could perform with his educational level and work experience.

Our rehabilitation manager, by request of our Benefits Review Committee, evaluated the positions cited by ConServCo and was asked to identify which positions Mr. Halpin was reasonably qualified for based upon education, training, medical restrictions and work experience. Our rehabilitation manager determined that Mr. Halpin is capable of performing the positions of Sales Manager, Manager of Merchandise and Sales Representative. An analysis of alternative occupations related to his skill background was also performed. Two positions for which he is qualified were cited. These positions are Superintendent of Maintenance and Maintenance Scheduler.

It is the recommendation of the Thomas L. Jacobs Benefits Review Committee that W.W. Grainger, Incorporated uphold the termination of Mr. Halpin's LTD benefits. The Committee's Decision is based upon the information as stated in this letter.

We trust that this information is sufficient for your needs at this time. Should you have any questions, please do not hesitate to contact us.

Sincerely,

Philip G. Schumer
Senior Associate

In addition, TLJ forwarded to Mr. Halpin's attorney a file containing the opinions and computer studies of its vocational experts. The initial denial letter does not comply with the regulations. As we noted above in setting out the statutory and regulatory requirements, a claimant is entitled by statute to a "full and fair review" of a denial of benefits, 29 U.S.C. § 1133, and, in order to permit such a review, the notice of decision must include specific reasons. 29 C.F.R. § 2560.503–1(h). This requirement ensures that a full and fair review is conducted by the administrator, enables the claimant to prepare adequately for appeal to the federal courts or further administrative review, and makes it possible for the courts to perform the task, entrusted to them by ERISA, of reviewing that denial. *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir.1991). The Eighth Circuit has read the statute and the regulations to require the administrator to "set out in opinion form the rationale supporting their decision." *See Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981). Bare conclusions are not a rationale. *See Wolfe*, 710 F.2d at 392; *Richardson*, 645 F.2d at 664. Nor are the defects cured by the later correspondence. With respect to this correspondence, we note that the regulations require that the denial letter itself contain specific reasons. Even if we assume that subsequent letters sent by an administrator can remedy deficiencies in a denial letter and amount to substantial compliance with the regulation, *see Short v. Central States, S.E. & S.W. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir.1984), this second letter is also inadequate. Moreover, the sending of the file, without sufficient indication of what parts of the file the Committee relied on or rejected, does not repair the inadequacy.

3.

Although Grainger's communication to Mr. Halpin did not comply with the regulations, our inquiry is not at an end. It is firmly established in the caselaw of this circuit and elsewhere that substantial com-

pliance with the regulations is sufficient.[6] In undertaking this inquiry, we must remember, however, the purpose of the regulations: to afford the beneficiary and the courts a sufficiently precise understanding of the ground for the denial to permit a realistic possibility of review, even under a deferential standard. Given a plan's non-compliance with the regulations, it is hardly our responsibility to scour the record in an effort to justify the plan's decision. This circuit has addressed the question of substantial compliance in *Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 535–36 (7th Cir.1986). There, the notification consisted of a letter and, attached to it, the minutes of the committee meeting in which it was decided to deny the claim. *Id.* at 535. Although the letter alone did not comply with the regulations, the letter and the minutes together did substantially comply: The "Committee considered all the evidence submitted before reaching its decision," and the minutes "identified each item considered ... and included the Committee's assessment of that item and the weight given to it," *id.*, and "[t]he Committee's comments in the minutes about each item considered sufficiently indicate[d] the reasoning underlying the Committee's decision." *Id.* at 536.

■ In the present case, several letters, as well as the file of material submitted by TLJ's vocational experts, were sent to Mr. Halpin. However, nothing was sent which in any adequate way identified the items considered by the administrator. There was no indication of the administrator's assessment of any of those items or of the weight given to them.[7]

Even the most cursory examination of the record makes it clear that the administrator's response cannot meet the "substantial compliance" standard of *Brown*. As we have already noted, the appeals process was skewed at the outset by Grainger's non-compliance with the regulations requiring an adequate disclosure of reasons for the initial denial. More fundamentally, Grainger's communication with Mr. Halpin with respect to the disposition of his appeal failed to resolve serious questions concerning Mr. Halpin's continued eligibility. Several examples are particularly obvious and we describe them briefly.

### 1. Medical condition

■ None of the administrator's letters refer to any of Dr. Riff's or Dr. Upton's findings which might raise doubt as to Mr. Halpin's ability to work: his chronic fatigue, his recurrent predictable chest and shoulder pain, his continuing regimen of therapy and medication, even though Mr. Halpin's appeal letter urged reconsideration of these factors.[8] We must conclude that the conclusory nature of Grainger's communication with Mr. Halpin did not satisfy the statutory and regulatory requirements. These communications, while they recited clinical information, did not tell Mr.

---

6. *See Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 536 (7th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *see also Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 892 (10th Cir.1988). "Every procedural defect will not upset a trustee's decision." *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir.1983); *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1308 (9th Cir.1986) ("remand merely to require the [administrator] to send a more detailed letter 'would be a useless formality'") (quoting *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985)); *cf. Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984) (substantive relief appropriate when procedural violations render decision arbitrary and capricious), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

7. Although the Plan required the administrator to "keep records of its proceedings and decisions," R.1 Ex. A at 12, apparently no minutes of the meetings of the Committee were sent to Mr. Halpin. On the record before us, we do not know whether minutes of that meeting were kept.

8. When TLJ first notified Mr. Halpin that it was reviewing his status, it provided Mr. Halpin with the medical questionnaire his doctor filled out. The form contained no space for extended comment or explanation. (In contrast, Dr. Upton, the independent cardiologist hired by TLJ, submitted his report in the form of a letter.) Thus TLJ controlled the format and the amount of medical information it received from Mr. Halpin's doctor.

Halpin the *reason* why that information justified, in Grainger's view, the termination of his benefits.

### 2. Vocational rehabilitation

As the district court stated, the administrator had "given no explanation" why it did not consider rehabilitative employment for Mr. Halpin as provided for in the Plan.[9] At least two of Grainger's own experts mentioned vocational rehabilitation in connection with Halpin. It is not clear whether their statements meant that Grainger should consider having Mr. Halpin back to work on a trial basis as provided for in the Plan or that Mr. Halpin could benefit from vocational retraining and counseling. In any case, neither Grainger nor TLJ gave any indication that they considered these statements, or (assuming that they did consider them) what they made of them. Nor did they ever respond to Mr. Halpin's argument, made in his request for administrative review, that it was unreasonable to terminate his benefits in view of Dr. Upton's opinion that he was a good candidate for vocational rehabilitation—a statement which, according to Mr. Halpin, meant not that he was then able to work, but merely that vocational rehabilitation might enable him to become so.

██ It is not always unreasonable for an administrator to determine, in spite of an expert opinion that a claimant is ready to return to work *on a trial basis*, that the claimant is presently able to return to work.[10] However, in making such a determination, the administrator must weigh the evidence for and against, and "within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review." *Young v. Secretary of Health & Human Services*, 957 F.2d 386, 393 (7th Cir.1992);[11] *see also Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir.1991) (administrator's selective review of the evidence supported reversal under arbitrary and capricious standard); *Exbom v. Central States, S.E. & S.W. Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir.1990) (under the arbitrary and capricious standard, "[i]f the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.*, one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final").

In respect to the issue of rehabilitative employment under the Plan, it may not be unreasonable to interpret the Plan as leaving the option of vocational rehabilitation to the sole discretion of Grainger, rather than mandating that it be considered in every case. However, there is no evidence

---

**9.** The plan has the following provision concerning rehabilitative employment: ·

1.16 *"Rehabilitative Employment"*—any occupation or employment for wage or profit for which the Employee is reasonably fitted by training, education or experience or may reasonably become qualified based on his training, education and experience, provided such Rehabilitative Employment is performed during a period in which the Covered Employee is unable to fully perform the duties of his regular occupation. Rehabilitative Employment shall be a status that may be granted by the Corporation. The Corporation may consider an Employee on Rehabilitative Employment for a limited period not to exceed 3 months in duration. The Corporation may renew a status of Rehabilitative Employment but not for more than 3 months at a time. In no event shall the aggregate duration of an Employee's Rehabilitative Employment exceed 12 months for all disability due to the same or related causes.

**10.** *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 985 (6th Cir.1991) (upholding administrator's decision to terminate benefits, even though one doctor had recommended return to work on a trial basis); *cf. Gunderson v. W.R. Grace & Co. Long Term Dis. Income Plan*, 874 F.2d 496, 500 (8th Cir.1989) (administrator's decision to terminate disability benefits not supported by substantial evidence, when it relied on opinions of doctors who indicated that retraining was necessary).

**11.** *Young* deals with the denial of Social Security Disability Insurance Benefits. Although the standards used in adjudicating social security cases are not applicable under ERISA, the guiding principles developed in those cases may be "instructive" in ERISA cases. *See Torix v. Ball Corp.*, 862 F.2d 1428, 1431 & n. 6 (10th Cir. 1988); *Helms v. Monsanto Co.*, 728 F.2d 1416, 1421 (11th Cir.1984).

that Grainger so interpreted the provision or that it interpreted it at all.[12] It is not explained why Mr. Halpin was not identified as a candidate for vocational rehabilitation. While a practice may not necessarily create an entitlement, the Grainger Plan specifically provides that all claimants "be treated in a uniform and nondiscriminatory manner." *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir.1990).

■ Grainger now argues that "rehabilitative employment is a status that the employee requests upon finding employment." However, even if this might be a reasonable interpretation of the provision, there is no evidence that this interpretation of the plan was espoused by the administrator or by TLJ at the time Mr. Halpin's benefits were terminated. "A *post hoc* attempt to furnish a rationale for a denial of ... benefits in order to avoid reversal on appeal, and thus meaningful review" is not acceptable. *Short v. Central States, S.E. & S.W. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir.1984). "ERISA and its accompanying regulations 'were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by the Fund as a smoke screen to shield itself from legitimate claims.'" *Id.* (quoting *Richardson v. Central States,*

*S.E. & S.W. Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir.1981)).

### 3. Actual job market

The district court also stated that Grainger had not explained why it had not investigated whether jobs existed and were actually available to Mr. Halpin. This issue was raised by Mr. Halpin in his appeal before Grainger. On October 12, 1988, several months before Grainger denied Mr. Halpin's appeal, Robert H. Miller, an attorney for TLJ, wrote to Mr. Halpin's lawyer, David J. Bressler, contesting Bressler's argument that existing law dictated that a claimant's actual employment prospects be taken into consideration in determining whether he was disabled.[13] However, Grainger, which was ultimately responsible for interpreting and applying the terms of the Plan, did not indicate whether it interpreted the Plan to mean that it was not necessary to consider actual employment prospects or whether it believed that actual employment prospects existed. Nor did Grainger mention either Dr. Upton's opinion that Mr. Halpin might have difficulty finding a job or the reservations expressed by Pamela Winterfield, an outside expert hired by TLJ to assess Mr. Halpin's vocational possibilities.[14] Nor does TLJ's letter,

---

**12.** Nancy Milnor, Grainger's Compensation and Benefits Administrator, testified that it was

> part of the contract we have at Thomas L. Jacobs. If they identify someone that they feel would be helped by getting vocational rehabilitation or counseling, they will go ahead and call me and ask me if I feel that, you know, they should go ahead and pursue that; and I always let them pursue that. I would love to do anything for those people that we possibly can, so if they have identified someone that they feel is a good candidate. Depositions Vol. VI at 55.

**13.** We are unable to conclude that this letter can be taken as a supplement of the final denial letter, when the letter contains no indication that the writer is speaking for the Committee as a whole or is expressing an interpretation of the Plan. Moreover, the final denial letter came more than six months later, and although the record contains only scanty indications of the thought processes of the Committee, those indications suggest that, at the time of Bressler's letter, the Committee was still examining the question.

**14.** Ms. Winterfield's report, dated November 18, 1988, identified "potential possibilities," but noted that "[s]uccessful rehabilitation into these job categories would require further analysis for wage information, labor market considerations and work adjustment related issues." Depositions Vol. 5 Ex. 2E. Although TLJ's letter to Grainger suggests that the Benefits Review Committee relied on Ms. Winterfield's report, the record leaves unclear what weight, if any, Ms. Winterfield's report had in the decision to terminate Mr. Halpin's benefits. In a September meeting, the Committee recommended that "real world occupations" be cited to support termination of Mr. Halpin's benefits. TLJ accordingly arranged for Ms. Winterfield's analysis. After a later meeting in which that analysis was apparently considered, the Committee's decision was to "recommend Rehab Mgr review and identify if there are any reasonable occs he could do. If he finds them we will uphold termination and it doesn't need to go back through committee." R.247. Thus it seems that the final decision was made by Mr. Schumer on the basis of the computer job survey then carried out by James Radke, TLJ's rehabilitation manager.

a copy of which was forwarded to Mr. Halpin in response to his request for "specific reasons" for the denial of his appeal, make clear what conclusion, if any, its Committee had reached on this point. We do not now decide the question whether it would have been arbitrary and capricious for Grainger to interpret the Plan's definition of disability to mean that termination of benefits could be proper even in the total absence of any possibility of actual employment.[15] We merely emphasize again that Grainger's failure to set out its reasoning makes any such review impossible.

### D. *Remedy*

The district court vacated the termination of Mr. Halpin's permanent disability benefits and ordered Grainger to reinstate the benefits as of May 30, 1988 (the date the benefits were terminated). It did not determine Mr. Halpin's entitlement to future benefits, leaving open the possibility that Grainger might again initiate a review of Mr. Halpin's status and eligibility.

Grainger argues that, even if the district court was correct in its analysis, it erred in ordering Mr. Halpin's benefits reinstated, rather than simply remanding the determination to the administrator for further review. In support of its argument, Grainger cites *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir.1983). *Wolfe* dealt with an initial denial of benefits, rather than, as here, a termination of benefits to which the administrator had previously determined the claimant was entitled. *See Wolfe*, 710

F.2d at 390. Moreover, in *Wolfe*, the plaintiff presented additional evidence to the district court on the merits of the claim. *See id.* at 394. Because of "policy considerations favor[ing] allowing the fiduciary to decide an employee's benefit eligibility," we held that "[w]hen additional evidence on the merits of the claim for benefits is presented for the first time to the district court, the court should remand to the fiduciary to make the initial assessment of whether such facts establish an applicant's eligibility." *Id.* (citing *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 828 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)).[16]

■ In the present case, it was not an abuse of discretion by the district court to order reinstatement of Mr. Halpin's benefits. *See Grossmuller*, 715 F.2d at 858–59 (when district court "properly concluded that the plan's claims procedure failed to comply with ERISA's requirements for 'full and fair review,'" reinstatement of terminated benefits was within the district court's discretion). Significant procedural deficiencies occurred. *See Wolfe*, 710 F.2d at 393. Such relief is authorized by the statute, *see* 29 U.S.C. § 1132(a)(1)(B), and, in the present case, is not barred by the principles enunciated in *Wolfe*. Grainger remains free in the future to initiate further review of Mr. Halpin's continuing eligibility for long-term disability benefits. However, on the basis of the processes

**15.** We note that the Tenth and the Eleventh Circuits have rejected "overly restrictive interpretations" of disability definitions in ERISA plans. *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir.1988); *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir.1984). Holding that "a reasonable interpretation of a claimant's entitlement to payments based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances," the Tenth Circuit reversed judgment for the plan administrator and remanded to the district court in a case where the plaintiff argued that the "committee's actions in construing the terms of the plan were arbitrary and capricious, because they did not take into account his age, limited educational background, and the unavailability of suitable employment in the area." *Torix*, 862 F.2d at 1431. Grainger

cites *Jestings v. New England Tel. & Tel. Co.*, 757 F.2d 8 (1st Cir.1985) (employer need not "ensure the availability of an alternative job"). We do not read *Jestings*, however, as incompatible with *Torix* or *Helms*, neither of which requires the employer or administrator to ensure the availability of a job.

**16.** *But see Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir.1992) (where plaintiff was not given the opportunity to present additional evidence to administrator ... in an administrative appeal because administrator failed to follow statutory notice requirement, remand to give administrator an opportunity to consider the new evidence not necessary).

undertaken so far, it cannot be permitted to terminate benefits previously awarded.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.