# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2689

JANET M. SCHNEIDER,

*Plaintiff-Appellant*,

*v.*

SENTRY GROUP LONG TERM
DISABILITY PLAN, SENTRY GROUP
SUPPLEMENTAL DISABILITY
INSURANCE PLAN, and
SENTRY LIFE INSURANCE COMPANY,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 721—**John C. Shabaz**, *Judge.*

_____

ARGUED MAY 12, 2005—DECIDED SEPTEMBER 7, 2005

_____

Before RIPPLE, ROVNER and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge.*  Janet M. Schneider claimed that
defendants Sentry Life Insurance Company ("Sentry Life"),
Sentry Group Long Term Disability Plan and Sentry Group
Supplemental Disability Insurance Plan (collectively,
"Sentry") violated the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., when her
disability benefits were terminated. The district court

granted Sentry's motion for summary judgment. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

# I
# BACKGROUND

## A. Facts

Ms. Schneider began working for Sentry Life in 1974. She held various positions at Sentry Life, ultimately reaching the position of "Director, Underwriting Services, National Accounts." R.2 at 4. As an employee of Sentry Life, Ms. Schneider participated in the defendant plans, Sentry Group Long Term Disability Plan and Sentry Group Supplemental Disability Plan (collectively, "the Plan"). The Plan is an employer-sponsored disability plan within the meaning of ERISA. 29 U.S.C. § 1002.

Ms. Schneider began treatment for depression in 1995, and, in 1999, she came under the care of psychiatrist Dr. Paul Samo. Dr. Samo diagnosed Ms. Schneider with recurrent major depressive disorder. Beginning in October 2001, her depression prevented Ms. Schneider from performing the duties of her job at Sentry Life. Accordingly, Dr. Samo excused her from work beginning on or about October 29, 2001. At this time, Ms. Schneider notified Sentry that she was disabled under the terms of the Plan. Initially, Ms. Schneider continued to receive her wages under the "Healthy Return Plan," a wage continuation plan that Sentry Life provided to its employees covering absence from work due to illness or injury. R.18 at 2. The Healthy Return Plan is not implicated in this action.

Prior to obtaining approval for her claim for disability benefits under the Plan, Ms. Schneider underwent an independent psychiatric medical evaluation ("IME"). Dr. Bruce Heyl, who conducted Ms. Schneider's IME, evaluated Ms. Schneider and reviewed Dr. Samo's records. Dr. Heyl concluded that Ms. Schneider "ha[d] suffered major depressive illness . . . that in the past and currently disables her from performing the substantial duties of her regular occupation." R.12, Tab 4 at 2. In his report detailing the IME, Dr. Heyl also advised Sentry that Ms. Schneider was "currently improving in her clinical depression." *Id.* He predicted that "her short and long term prognosis . . . for complete recovery" was "good" and anticipated that she would be able to return to work in June 2002. *Id.* Dr. Heyl also noted that, because a personality conflict with a supervisor at work was contributing to her illness, "[r]esolution of this relationship conflict would facilitate her return to employment." *Id.* at 3.

In May 2002, Sentry informed Ms. Schneider that her claim for disability benefits had been approved and she began receiving benefits under the Plan. In June 2002, Sentry notified Ms. Schneider that her disability had been verified until July 31, 2002, and that the company would require periodic updates regarding her medical condition from her treating physician.

On July 31, Dr. Samo recommended extending Ms. Schneider's disability leave through September 14, 2002, and Dr. Heyl agreed that her leave should be extended until September 2002. Dr. Samo also recommended extensions of Ms. Schneider's disability leave in September and October 2002. In November 2002, Dr. Samo recommended that Sentry treat Ms. Schneider as "permanently restricted" from work due to her depression. R.12, Tab 9 at 1. In a subsequent letter to Sentry supporting the permanent restriction

recommendation, Dr. Samo noted that Ms. Schneider had not continued to improve as quickly as he initially had hoped she would and that she had experienced "a setback in her progress." R.12, Tab 10 at 1.

In order to determine Ms. Schneider's condition, Sentry contracted with a company called PsyBar to conduct an additional IME with respect to Ms. Schneider. The IME was conducted by Dr. Michael J. Spierer, a psychologist, on February 25, 2003.

In February 2003, Dr. Samo wrote a letter (the "February letter") to Sentry describing Ms. Schneider's condition. Dr. Samo stated that Ms. Schneider's recurrent major depressive disorder was "currently mild." R.12, Tab 12 at 1. He also opined that "it would be unwise for her to return to her prior job," because "[i]f she were to do that it would be likely that the depression would worsen." *Id.* Instead, Dr. Samo explained, "[o]ur goals would be for her to find alternate employment." *Id.*

In March 2003, Dr. Spierer authored a report detailing the results of Ms. Schneider's IME. Dr. Spierer's nine and one-half page report surveyed Ms. Schneider's medical history and reviewed the findings of Dr. Samo and Dr. Heyl. Ultimately, Dr. Spierer concluded that Ms. Schneider was "capable of returning to work" as of the date of the report. R.12, Tab 13 at 9. Dr. Spierer also indicated that Ms. Schneider did not require "any special accommodations . . . in order to be able to return to work," but he noted that, if Ms. Schneider were to work under the supervisor with whom she had a personality conflict, she "very likely would experience interpersonal conflict with him." *Id.*

Sentry sent a copy of Dr. Spierer's IME report to Dr. Samo to determine whether he agreed with the findings in the report. In a letter to Sentry (the "March 24 letter"), Dr. Samo

responded:

> I agree that Janet Schneider is now ready to return to work. She has made slow, gradual improvements in her condition with time. Before this point, however, I would have worried about her returning to work. Mrs. Schneider is interested in discussing possibilities at this time. She would be most interested in becoming an independent consultant to Sentry Insurance. This may provide her with the flexible [sic] that she desires. Please contact Mrs. Schneider to discuss possible job opportunities at this time.

R.12, Tab 15 at 1.[1]

On April 23, 2003, Sentry sent a letter (the "April 23 letter") to Ms. Schneider explaining that it had reviewed her claim and had determined that her long-term benefits should be terminated. The letter read, in relevant part:

> Based on the February 25, 2003 Independent Medical Exam report and Dr. Samo's letter dated March 24, 2003 you have recovered and can return to work. As a result

---

[1] Dr. Samo also sent a letter to Karen Roll, a registered nurse hired by Sentry to keep track of Ms. Schneider's claims, on June 3, 2003. In the letter, Dr. Samo stated that Ms. Schneider "has been advised not to return to her previous position as this was too stressful for her and would likely worsen her depression again." R.12, Tab 23 at 1. He also indicated that he "would not advise her to return to full-time work status in any position." *Id.* at 2. It is not clear whether this letter was a part of Sentry's final decision regarding Ms. Schneider's appeal of the denial of her benefits. In any event, the evidence of Dr. Samo's June 3 letter is relevant to Ms. Schneider's contention that the termination of her benefits was arbitrary and capricious, a submission that we do not reach.

of this information, no further benefits are due.

Dr. Samo indicates that you would be most interested in becoming an independent consultant to Sentry Insurance. If you wish to pursue this matter, please contact the Human Resources Department.

R.12, Tab 17 at 1.

Ms. Schneider sent an e-mail on May 14, 2003 (the "May 14 e-mail"), to Gary Sopa, a Senior Disability Service Representative for Sentry. She wrote:

I have a few questions related to the termination of my disability. . . .

Sentry's IME (February) and my physician, Dr. Samo, concur that treatment has progressed to the point where a return to work is possible. . . . In Dr. Samo's letter of March 24, he asked that you contact me to discuss the options available in returning to work. Your letter of April 23, 2003, simply indicates that, since I am now able to return to work, no more disability benefits are due to me. I did not receive any contact from Sentry to discuss options or the process of returning to work at that time.

I contacted Sentry Human Resources on May 12, 2003 . . . . The position I held at the time I became disabled no longer exists as the result of reorganizations that have taken place since then. Thus, I am now able to return to work, but have no work to which I can return. I am working with Liz McDonald, in Sentry Human Resources, to determine if other positions may suit my background and capabilities. I have also talked with Liz about job-hunting with other firms, as the outlook at Sentry is not very promising at this time.

My status is, according to, [sic] Ms. McDonald, that of

a Sentry Employee.

It seems to me that, given the circumstances, it is not acceptable for the Sentry Disability Plan to simply end the payment of benefits. As a result of my disability, I have no position in which a return to work is possible. I will gladly "Return To Work" if I can find a position, whether within Sentry or outside of Sentry. I would think, though, that assistance in returning to gainful employment should be provided, since the lack of a position for me to return to is the result of my long-term disability. I would also think that benefits, at some level, should continue until I am able to find work, or for some additional period of time while I search for a new position (something along the lines of the process described in the "Return To Work" section of the disability plan). Some Rehabilitation efforts may also be necessary if I need to change fields of work in order to find employment.

A review of the decision to simply "terminate" benefits is in order . . . . Please let me know what "management" decides.

R.12, Tab 19 at 1.

Sentry interpreted Ms. Schneider's letter as an appeal. In a "MANAGEMENT PROTOCOL" form, dated "5/16/03," that refers to Ms. Schneider as the "CLAIMANT," it is noted that Sentry employees are to "[d]iscuss 5/14/03 request"—presumably Ms. Schneider's e-mail of May 14—and that, after the discussion, an "appeal to [the] Plan administrator" was to be completed. R.12, Tab 20 at 1. Furthermore, in an e-mail dated June 9, 2003, one Sentry employee noted to another "the denial of the appeal from JS [Janet Schneider] for continued LTD [long-term disability] benefits." R.12, Tab 21 at 1. The e-mail also noted that "JS will be

informed of this decision in a letter dated and mailed today." *Id.*

On June 9, 2003, Sentry sent Ms. Schneider a letter regarding her purported appeal. The letter explicitly stated that it was meant to "communicate[] the decision of the plan administrator regarding [Ms. Schneider's] appeal." R.12, Tab 22 at 1. The letter concluded:

> Based on both the recent independent medical evaluation and your attending physician's statement, you are no longer disabled. As such, you no longer qualify for benefits under the disability plan. . . . Since you are not disabled, no further disability benefits are available.
>
> Upon review, the plan administrator finds that under the terms of the disability policy, no additional benefits are available to you as you are not disabled. The termination of benefits is upheld.

*Id.*

## B.  District Court Proceedings

Ms. Schneider filed this action, alleging that her long-term disability benefits wrongfully had been terminated; that she had not received adequate notice of the termination of her benefits, as defined by 29 U.S.C. § 1133(1) and the regulations interpreting it; and that the Plan Administrator had failed to conduct a full and fair review of her claim for benefits as required by § 1133(2). Ms. Schneider sought relief in the form of either an award of her unpaid benefits plus interest or, in the alternative, an order vacating the termination of her long-term disability benefits and reinstating the benefits retroactively to April 17, 2003. She also requested costs and attorneys' fees. The parties submitted

cross motions for summary judgment.

The district court granted summary judgment for Sentry. In its order, the district court first addressed Ms. Schneider's contention that Sentry's initial notice of termination of her disability benefits did not comply with ERISA's statutory and regulatory requirements for such notice. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(g). The court concluded that, even though Sentry had not effected strict compliance with the applicable statutory and regulatory requirements for notice, it had achieved "substantial compliance" with those requirements. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992). Because Ms. Schneider ultimately did take an appeal from the denial of benefits, the district court deemed Sentry's notice adequate, even though the April 23 letter did not state the plan provision on which the denial of benefits was based and did not identify the steps to take an appeal.

Furthermore, the district court concluded that the decision to terminate Ms. Schneider's benefits was not arbitrary and capricious. In making this determination, the district court relied on the opinions of Drs. Spierer and Samo to the effect that Ms. Schneider was able to return to work. The district court also concluded summarily that Ms. Schneider received a full and fair review of the initial decision to terminate her benefits.

## II

## DISCUSSION

Ms. Schneider takes issue with three aspects of the district court's disposition of her claims. First, she contends that the district court erred in granting summary judgment to Sentry on her claim that she was not provided with adequate notice

of the termination of her benefits. Second, she asserts that, contrary to the district court's determination, she did not receive a full and fair review of her claim for benefits as required by ERISA. Third, she submits that the termination of her benefits was arbitrary and capricious.

## A. Standard of Review

We review de novo the district court's grant of a motion or cross-motion for summary judgment. *Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 939 (7th Cir. 2004). Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "In considering cross-motions for summary judgment, we are obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made." *Gazarkiewicz*, 359 F.3d at 939.

## B. Statutory Procedures and Requirements for Denial of Benefits

Ms. Schneider submits that Sentry's April 23 letter did not meet ERISA's statutory and regulatory notice requirements. We first shall review those requirements before turning to an assessment of whether the notice afforded to Ms. Schneider in the present case was appropriate.

ERISA mandates that specific reasons for the denial of benefits be communicated to the claimant. *See Militello v. Cent. States, Se. and Sw. Areas Pension Fund*, 360 F.3d 681, 688 (7th Cir.), *cert. denied*, 125 S. Ct. 106 (2004). The relevant

section of ERISA provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Furthermore, federal regulations, promulgated pursuant to ERISA and in force at the time the April 23 letter was sent, set forth the following requirements for the notification of an adverse benefit determination:

> The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures . . . .

29 C.F.R. § 2560.503-1(g).[2]

In assessing the notification which a plan has provided regarding an adverse benefit determination, this court has held that "substantial compliance [with the applicable regulations] is sufficient." *Halpin*, 962 F.2d at 690. Our determination that substantial compliance is sufficient to satisfy § 1133 was "guide[d]" by the "purpose of the statute and regulations," all of which "are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Id.* at 689-90. Thus, in asking whether substantial compliance with the regulations governing notification has been achieved, we consider: "[W]as the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear

---

[2] Both the district court and Ms. Schneider apparently believe that the applicable regulations are 29 C.F.R. § 2560.503-1(f). However, based on the substance of Ms. Schneider's submissions to this court, the district court's summary judgment order and our review of the Code of Federal Regulations, it is clear that the regulations that govern the circumstances of the present action are (and have been, at all times relevant to this case) set forth at 29 C.F.R. § 2560.503-1(g). We suspect that the confusion stems from the fact that the substantive regulations at issue in this case were set forth at subsection (f) of 29 C.F.R. § 2560.503-1 at the time *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992), one of this circuit's most detailed explanations of the "substantial compliance" test, was decided. The substance of the former subsection (f) has not changed since it has been located at subsection (g). *Cf. Militello v. Cent. States, Se. and Sw. Areas Pension Fund*, 360 F.3d 681, 687 n.6 (7th Cir.) (using *Halpin*'s "substantial compliance" rule to determine whether section 2560.503-1(g) had been satisfied), *cert. denied*, 125 S. Ct. 106 (2004). Therefore, we shall consider section 2560.503-1(g) as it affects this case.

understanding of the administrator's position to permit effective review"? *Id.* at 690.

## C. Application to this Case

The parties agree that the Plan did not comply strictly with the governing regulations. Therefore, with the foregoing principles in mind, we now shall consider whether Sentry's April 23 letter substantially complied with the statutory and regulatory requirements for notice.

Ms. Schneider submits that Sentry's April 23 letter failed to comply substantially with section 2560.503-1(g). She alleges that the April 23 letter did not set forth the specific reasons for the denial of benefits, did not refer to the plan provision on which the denial of benefits was based and did not identify any information that would have allowed her to perfect her claim. Ms. Schneider also contends that she never had a chance to present her case for continuation of benefits because Sentry's April 23 letter did not include information on how to submit her claim for appeal.

Sentry, on the other hand, contends that substantial compliance with section 2560.503-1(g) has been shown. According to Sentry, the April 23 letter identified Dr. Spierer's report and Dr. Samo's February letter as the basis for the termination of benefits. Sentry submits that Ms. Schneider's contention regarding the failure of the April 23 letter to inform her of the Plan's review procedures is moot because, in Sentry's opinion, Ms. Schneider appealed the denial of benefits in her May 14 e-mail to Sentry.

The notice that Sentry afforded Ms. Schneider was indefensible as a matter of statute, regulation and case law. In the first place, the April 23 letter failed to meet the requirement, contained both in § 1133(1) and in section

2560.503-1(g)(I), that the notification set forth the specific reasons for the termination of benefits. Ms. Schneider was not provided with the nine and one-half page report which Dr. Spierer prepared and on which Sentry insists it based its decision to terminate benefits. Nor was she provided with a summary of that report. Because Ms. Schneider did not know what reasons motivated Dr. Spierer's conclusion that she was no longer disabled, she could hardly seek review of that conclusion. Furthermore, even a cursory reading of the April 23 letter reveals that it did not identify the specific plan provision on which the denial was based, as required by section 2560.503-1(g)(ii). On the first two requirements set forth in section 2560.503-1(g), then, Sentry's notice did not permit Ms. Schneider "a sufficiently clear understanding of the administrator's position to permit effective review." *Halpin*, 962 F.2d at 690.

We also must consider the requirements in section 2560.503-1(g)(iii) and (iv), which mandate that the notice contain "[a] description of any additional material or information necessary for the claimant to perfect the claim" and "[a] description of the plan's review procedures and the time limits applicable to such procedures." Certainly, the April 23 letter made no mention of any information Ms. Schneider could provide to perfect her claim or of the channels through which she could seek review of the decision to terminate her benefits. In evaluating the failure of the April 23 letter to make reference to Sentry's review procedures, we especially note that Ms. Schneider's May 14 e-mail—which Sentry interpreted as an appeal—stated, "[a] review of the decision to simply 'terminate' benefits is in order." R.12, Tab 19 at 1. Obviously, such a bare request could not permit a "meaningful review of [the] denial" of her disability benefits. *Halpin*, 962 F.2d at 689. In our opinion, the artlessness of Ms. Schneider's request,

rather than constituting proof that the April 23 letter was adequate notification to Ms. Schneider of her right to appeal, helps establish that the notification failed to give Ms. Schneider access to the kind of "effective review" that ERISA, its accompanying regulations and our cases contemplate. *Id.* at 690.

In short, the April 23 letter did not fulfill the purpose of the statute, which was to "afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Id.* at 689-90. In light of the foregoing analysis, we must conclude that Sentry's April 23 letter failed to comply substantially with the requirements of section 2560.503-1(g). Because we have determined that Sentry failed to provide Ms. Schneider with an explanation that is adequate to ensure a meaningful review of the termination of her benefits, we conclude that Ms. Schneider is entitled to summary judgment on her claim that Sentry violated ERISA, 29 U.S.C. § 1133.[3]

### D. Remedy

The parties dispute whether we should remand Ms. Schneider's claim to the plan administrator (in this case, Sentry) or whether, instead, we should issue an order vacating the termination of Ms. Schneider's benefits and

---

[3] Ms. Schneider has asserted two other grounds for appeal: that she did not receive a full and fair review of her claim for benefits as required by ERISA and that the termination of her benefits was arbitrary and capricious. Because we have determined that Sentry violated § 1133 by failing to give Ms. Schneider adequate notification of its decision to terminate her long-term disability benefits, it is unnecessary for us to consider these issues.

reinstating retroactively those benefits. In fashioning re-lief for a plaintiff who has sued to enforce her rights under ERISA, *see* 29 U.S.C. § 1132(a)(1)(B), we have fo-cused "on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination" of benefits. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003).

Because of our emphasis on restoring the status quo prior to the defective procedures, we have distinguished between

> a case dealing with a plan administrator's initial denial of benefits and a case where the plan administrator terminated benefits to which the administrator had previously determined the claimant was entitled. *Compare Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393-94 (7th Cir. 1983) (remanding to the administrator for new hearing where initial denial of benefits was not procedurally accurate) *with Halpin*, 962 F.2d at 697 (affirming district court's reinstatement of plan benefits where termination was not procedurally adequate).

*Hackett*, 315 F.3d at 775-76.

In *Halpin*, we concluded that an employer-sponsored disability plan had failed to comply substantially with ERISA and its implementing regulations in terminating the plaintiff's benefits. On the question of remedy, we held that a district court did not abuse its discretion when it ordered the reinstatement of the plaintiff's benefits as of the date the benefits were terminated. *Halpin*, 962 F.2d at 697. Furthermore, in other cases, we have suggested that "retroactive reinstatement of benefits is the proper remedy" when, for instance, a plan's claims procedure "did not comply with ERISA's requirements for full and fair review." *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477 (7th

Cir. 1998) (citing *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America, UAW*, 715 F.2d 853, 858-59 (3d Cir. 1983)).

We believe that this case is comparable to *Halpin*.[4] As in *Halpin*, here, Ms. Schneider ceased receiving benefits to which she had earlier been determined to be entitled after the Plan utilized improper notification procedures. Thus, we shall order the same relief directed in *Halpin*.

Sentry argues that reinstating Ms. Schneider's benefits would provide her with " 'an economic windfall should she be determined not disabled upon a proper reconsideration.' " *Hackett*, 315 F.3d at 776 (internal quotation omitted). However, we think that Sentry's reliance on *Hackett* for this point is improper. When read in context, the language from *Hackett* to which Sentry has directed us explicitly applies to those cases in which a plaintiff appeals a plan administrator's initial denial of benefits. *See id.* This court's opinion in *Hackett* then moves on to discuss "cases where the plan administrator *terminated benefits* under defective procedures" and concludes that the "continuation of benefits" appropriately restores the status quo in such

---

[4] Unlike the circumstances in *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 390 (7th Cir. 1983), in which a plaintiff was appealing the initial denial of benefits, in this case, Ms. Schneider already had been determined to be eligible for long-term disability benefits under the Plan. Furthermore, unlike the circumstances in *Quinn v. Blue Cross & Blue Shield Association*, 161 F.3d 472, 477 (7th Cir. 1998), in which the plaintiff was facing a deadline upon which her benefits were to be terminated, in this case, Ms. Schneider was not facing any such deadline. Sentry has not argued that Ms. Schneider was not scheduled to continue receiving benefits.

cases. *Id.* (emphasis added). In light of our cases' concern for restoring the status quo prior to the procedural misstep, reinstatement is in order in this case.

In this case, prior to the termination of her benefits by improper procedures, the status quo was that Ms. Schneider was receiving long-term disability benefits from the Plan. The appropriate remedy is an order vacating the termination of her benefits and directing Sentry to reinstate retroactively the benefits. We point out that the decision to terminate Ms. Schneider's long-term disability benefits was not accompanied by the proper procedural protections, but it was not necessarily wrong. Sentry is free to revisit Ms. Schneider's eligibility for benefits.

## Conclusion

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED

A true Copy:

   Teste:

         _____

         *Clerk of the United States Court of*
         *Appeals for the Seventh Circuit*