**Jarek Tylenda MOLLER,**
**Plaintiff–Appellant,**

v.

**NORTH SHORE UNIVERSITY HOSPI-TAL, its agents, servants and employees, and Dr. David Levine, individually, Defendants–Appellees.**

**No. 1502, Docket 93–7102.**

United States Court of Appeals, Second Circuit.

Argued May 17, 1993.

Decided Dec. 13, 1993.

Alexander J. Wulwick, New York City (Lawrence Bernstein, of counsel), for plaintiff-appellant.

Scott C. Watson, Garden City, NY (Laurence G. McDonnell, Keller, O'Reilly & Watson, P.C., of counsel), for defendants-appellees North Shore University Hosp.

Elizabeth Cornacchio, New York City (Linda H. Ruma, Heidell, Pittoni, Murphy & Bach, of counsel), for defendant-appellee Dr. David Levine.

---

**14**

Before: WINTER and JACOBS, Circuit Judges, and MUKASEY, District Judge.*

WINTER, Circuit Judge:

Jarek Tylenda Moller appeals from Judge Spatt's amended judgment granting Dr. David Levine's motion for summary judgment in Moller's medical malpractice action claiming aggravation injuries and a cross-motion for summary judgment on behalf of North Shore University Hospital ("NSUH"). Moller argues that the district court erred in concluding that prior settlements with the original tortfeasors completely satisfied his claims under New York's General Obligations Law Section 15–108.

The fact that Moller's aggravation injuries had been considered in settlements in releases negotiated with the original tortfeasors does not support a conclusion that Moller's claims have been satisfied, particularly when the full amount of his damages has not been determined. Instead, Section 15–108 directs the court to set off amounts released from the jury's damages award, if Moller later succeeds at trial in the instant matter. N.Y.GEN.OBLIG.LAW § 15–108 (McKinney 1989).

## BACKGROUND

During June 1988, Moller, a 21–year–old Swedish citizen, arrived in the United States. On September 18, 1988, Moller worked at a party catered by Squire Catering, Inc. and hosted by Abe Daniels, president of Squire Catering. Moller left the party in a car driven by Richard Treulieb. Treulieb drove the automobile into a utility pole in Great Neck, New York. Moller was ejected from the vehicle and sustained serious injuries.

Moller was treated in NSUH's emergency department as a trauma patient. The medical staff examined him, performed several laboratory tests, and took x-rays, including a chest x-ray. By 2:20 in the morning of September 19, Dr. David Levine, assisted by another doctor, operated on Moller. During that operation, Levine discovered a lacerated spleen, lacerated liver, and damaged colon (two tears and a hematoma) and attempted to repair them. Among other things, the surgeons performed a splenectomy and an exploratory laparotomy on Moller. Following that operation, Moller had movement in all of his extremities.

Later that day, a repeat chest x-ray revealed a possible laceration of the aorta. A thoracic angiogram detected a definite tear in the aorta. Promptly, Dr. Michael Hall performed a left posterolateral thoracotomy during a second operation that was described as "uncomplicated." Thereafter, Moller's bilateral mobility in his lower extremities was significantly diminished. He was diagnosed as having "anterior spinal artery syndrome, which resulted in paraparesis of [his] lower extremities and a neurogenic bladder and bowel."[1] *Moller v. North Shore Univ. Hosp.*, 800 F.Supp. 1103, 1105 (E.D.N.Y. 1992). After approximately four months of rehabilitative work at New York University's Rusk Institute of Rehabilitative Medicine, Moller was still disabled.

During October 1988, Moller brought a personal injury action against Treulieb, Daniels, and Squire Catering (the "original tortfeasors") in New York State Supreme Court for the County of Queens.

Treulieb and Moller commenced settlement negotiations. After considering the extent of Moller's full disabilities, Joan Goodman of Hanover Insurance Company, Treulieb's insurer, settled on behalf of Treulieb in the amount of $250,000, the full amount of the insurance coverage, in January 1989. Moller executed a Release and a Stipulation Discontinuing Action with Prejudice with respect to Treulieb. The documents did not expressly discharge other tortfeasors from liability. In fact, Moller expressly reserved

---

* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

1. The district court's opinion explained that: Paraparesis is defined in *Stedman's Medical Dictionary*, Fourth Edition, as "a slight degree of paralysis, affecting the lower extremities." Neurogenic is defined as "originating in or starting from, or caused by, the nervous system or nerve impulses."
*Moller*, 800 F.Supp. at 1105.

his rights to pursue the remaining defendants.[2]

Moller's action against Daniels and Squire Catering, who allegedly served liquor to Treulieb, proceeded to trial in April 1990. At the close of a bifurcated trial on the issue of liability, the jury rendered a verdict holding Treulieb and Squire Catering liable for sixty percent and forty percent, respectively. Daniels was not found liable.

The damages phase of the trial then commenced. Moller called an expert physician, Dr. Nathanial Shafer, who testified about the permanent paralysis of Moller's lower extremities and his permanently neurogenic bladder and bowel. He explained that Moller is generally confined to a wheelchair and is unable to walk without the assistance of crutches and special leg braces.

On April 24, 1990, Moller and Squire Catering agreed to a settlement of $475,000, $25,000 less than the policy's maximum coverage. Moller executed a Stipulation Discontinuing Action with Prejudice and a Release of Squire Catering from any further liability. The Stipulation and Release neither expressly discharged other tortfeasors, nor expressly reserved Moller's rights against them.

In November 1990, Moller filed the instant action against Dr. David Levine and NSUH, in the Eastern District, seeking damages for aggravation of his injuries as a result of medical malpractice.

Levine and NSUH filed motions to dismiss under Fed.R.Civ.P. 12(b)(6) and for summary judgment under Fed.R.Civ.P. 56. After Moller filed an amended complaint, the district court held a hearing "to determine whether [Moller's] prior settlements in state court actions constituted or were intended to constitute a satisfaction of all damages in the case." During the hearing, Joan Goodman of Hanover Insurance Company testified. She admitted weighing the extent of Moller's present disabilities in considering the settlement. Stanley Janoff of Public Service Mutual Insurance Company ("PSMI"), Squire Catering's insurer, also testified. He explained that he considered the degree of Moller's current disability important in conducting the settlement negotiations.

The district court found that both Goodman and Janoff considered the aggravation injuries allegedly resulting from medical malpractice as well as the original injuries in reaching their settlements. Based on this finding, the district court held that the two settlements "completely satisfied" Moller's aggravation claims. Judge Spatt therefore granted summary judgment for Levine and NSUH, dismissed the amended complaint and discontinued Levine's and NSUH's cross-claims.

On appeal, Moller contends that the court's finding that the aggravation injuries had been considered in the settlement agreements executed with the original tortfeasors does not support the conclusion that he has been fully compensated for his injuries.

## DISCUSSION

[1] In reviewing a grant of summary judgment, we conduct a *de novo* review. *See, e.g., Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Summary judgment is granted if, viewing the facts in the light most favorable to the nonmovant, "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992); *see also Eastman Kodak Co. v. Image Technical Servs., Inc.*, —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant, however, "may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; there must be a genuine issue of material fact." *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

---

**2.** The Stipulation Discontinuing Action With Prejudice did "not discontinue against" Daniels and Squire Catering. The Release did "not

waive [Moller's] right to proceed against any and all other defendants or parties."

■ In this diversity case, we apply state law. Under New York law, persons who tortiously inflict personal injuries are liable not only for the injuries they immediately cause but also for the aggravation of injuries through the subsequent malpractice of treating hospitals and doctors. *Hill v. St. Clare's Hosp.*, 67 N.Y.2d 72, 82, 499 N.Y.S.2d 904, 490 N.E.2d 823 (1986). A victim can thus recover for aggravation of injuries from either the original or successive tortfeasors. Successive tortfeasors, of course, are liable only for the aggravation of the original injuries, and a victim may not recover damages for the same injuries twice. *See id.* at 83, 499 N.Y.S.2d 904, 490 N.E.2d 823.

Section 15–108 of New York's General Obligations Law concerns the "[e]ffect of [a] release of or covenant not to sue tortfeasors." It states that:

> When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipuleted [sic] by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

N.Y.GEN.OBLIG.LAW § 15–108 (McKinney 1989). This section abrogated the common law rule "that release of the original wrongdoer barred an action against a hospital or physician for ... additional injury or damages." *Hill*, 67 N.Y.2d at 83, 499 N.Y.S.2d 904, 490 N.E.2d 823; *Williams v. Niske*, 81 N.Y.2d 437, 442, 599 N.Y.S.2d 519, 615 N.E.2d 1003 (1993). Section 15–108 thus continues the obligations of non-settling tortfeasors after a partial settlement, absent some express provision to the contrary, but provides for a set-off to guarantee that the releasor does not receive a double recovery.

■ In the instant matter, the original tortfeasors and the alleged successive tortfeasors, Levine and NSUH, share liability for the aggravation injuries. *See Hill*, 67 N.Y.2d at 82–83, 499 N.Y.S.2d 904, 490 N.E.2d 823. Section 15–108 states that where "two or more persons [are] liable or claimed to be liable in tort for the [aggravation] injury," "release[s]" by some tortfeasors do "not discharge any of the other tortfeasors from liability for the injury ... unless [the release's] terms expressly so provide...." Because the releases for Treulieb and Squire Catering did not contain express provisions releasing other tortfeasors from liability, the alleged successive tortfeasors were not released from their potential liability for aggravation injuries.

The district court thus erred in holding that Levine and NSUH were relieved of all liability because the settling defendants considered the aggravation injuries. *Moller*, 800 F.Supp. at 1112. The full amount of damages suffered by Moller has not been established at a trial, and "nothing, short of sheer speculation, ... warrant[s] the conclusion that the amount of the settlement[s] is equal to the amount of [Moller's] loss." *Utter v. South Brookhaven Obstetric & Gynecologic Assocs.*, 135 A.D.2d 811, 522 N.Y.S.2d 915, 917 (2d Dep't 1987); *see also Carter v. New York*, 139 Misc.2d 423, 528 N.Y.S.2d 292, 296 (N.Y.Ct.Cl.1988) (requiring a determination of damages "so a proper comparison can be made between them and the damages covered by the settlement"), *aff'd*, 154 A.D.2d 642, 546 N.Y.S.2d 648 (2d Dep't 1989). In light of Section 15–108's requirement of an express discharge of other tortfeasors, a court may not surmise that a release of some tortfeasors indicates that all damages suffered have been satisfied and that non-settling tortfeasors are also released. *See Utter*, 522 N.Y.S.2d at 916–17 (rejecting argument that settlement and release were intended to satisfy all damages). *But see Lilly v. New York City Health and Hosp. Corp.*, N.Y.L.J. Apr. 21, 1992, at 21 (stating whether settlement "constitutes satisfaction of all damages or was intended as such is a question of fact to be resolved upon a trial").

However, the fact that the settling parties considered the aggravation injuries does affect any award of damages in the instant

 

matter. Under Section 15–108, any damage award against successive tortfeasors must be reduced to prevent double recovery. Section 15–108 directs that the prior releases reduce "the claim of the releasor [Moller] against the other tortfeasors." N.Y.GEN.OBLIG.LAW § 15–108. If the instant case proceeds to trial and Moller prevails, the court must then determine the appropriate set off to reflect the prior releases. *See Hill,* 67 N.Y.2d at 72, 499 N.Y.S.2d 904, 490 N.E.2d 823; *Williams,* 81 N.Y.2d at 437, 599 N.Y.S.2d 519, 615 N.E.2d 1003. Because this issue has not been briefed by the parties and is not properly before us, we do not reach the issue of the proper method of setting off these releases.

## CONCLUSION

We reverse the district court's grant of summary judgment, dismissal of the amended complaint, and discontinuance of cross-claims.