**Joseph R. MIRTO, D.C.P.C., Plaintiff,**

v.

**AMALGAMATED RETAIL INSURANCE FUND, Defendant.**

No. 93 Civ. 7227 (DAB).

United States District Court,
S.D. New York.

April 11, 1995.

Cartier, Hogan, Sullivan, Bernstein & Auerbach, Patchogue, NY (James K. Hogan, of counsel), for plaintiff.

Amalgamated Retail Ins. Fund, New York City (Mark Schwartz, of counsel), for defendant.

## OPINION AND ORDER

BATTS, District Judge.

Plaintiff Joseph R. Mirto, D.C.P.C., brings this action against defendant Amalgamated Retail Insurance Fund to recover benefits under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For reasons more fully explained below, the motion is denied.

## BACKGROUND

The Amalgamated Retail Insurance Fund ("the Fund") is a multi-employer trust fund created pursuant to an Agreement and Declaration of Trust. The purpose of the Fund is to provide benefits to employees of employers obligated by collective bargaining agreements with locals of the Amalgamated Clothing and Textile Workers' Union to make contributions to the Fund. (Levitt Aff. ¶ 3.) This fund is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1001, *et seq.* (Def. Local Rule 3(g) Statement ¶ 1.) The Fund employed Amalgamated Fund Administrators ("AFA") as a third-party administrator to process claims; AFA purchases certain services, but not insurance, from the Amalgamated Life Insurance Company. (Levitt Aff. ¶ 5.) The Restated Agreement and Declaration of Trust governing the Fund, as of March 1986 ("the Plan"), provides in Article VII, Section 10, that the Fund Trustees

> shall have the full and complete power and authority to determine all matters arising in the administration, interpretation and application of the Fund and the Plans administered by the Trustees, to determine all questions of coverage and eligibility, methods of providing or arranging for benefits, to determine and decide all questions concerning the nature, amount and duration of benefits ...

Plaintiff Mirto is a chiropractor with an office in New York City. (Pl. Local Rule 3(g) Statement ¶ 1.) On May 18, 1992, Kevin Daley, an insured of defendant, presented himself at plaintiff's office. (Hogan Aff. at 1.) The documents and records submitted in this case make clear that numerous treatments and exams were performed on Daley by Dr. Mirto, (Levitt Aff., Ex. A–E), but this dispute revolves around payment—claimed by plaintiff to be due—for only two tests: a nerve conduction test performed on May 20, 1992, and a Somatosensory Evoked Potential Test, performed on June 10, 1992. (Hogan Aff. at 2.)

Mirto received an assignment of claims from Daley for the entirety of the treatment and diagnostic exams, and then submitted claims to the defendant for payment of the services provided and tests performed. (Levitt Aff., Ex. D at 2 (Letter from Hogan to Amalgamated of 2/16/94, at 2).) Defendant then requested by letter dated August 24, 1992, all treatment records relating to various claims, including the claims at issue. (Levitt Aff., Ex. D at 18 (Letter from Greenberg to Mirto of 8/24/92).) According to plaintiff, all the relevant records were submitted on August 28, 1992, except for copies of x-rays.[1] (Levitt Aff., Ex. D at 2 (Letter from Hogan to Amalgamated of 2/16/94, at 2); Levitt Aff., Ex. C. at 7 (Letter from Mirto to Greenberg of 9/21/93, at 2).) Nevertheless, Dr. Mirto submitted a "summary of x-ray findings along with treatment/prognosis." (Levitt Aff., Ex. D at 1 (Letter from Hogan to Amalgamated of 2/16/94, at 1).) An identical request for documentation was made to plaintiff in October of 1992, and the same records which were submitted on August 28, 1992, were again sent on October 16, 1992. (Levitt Aff., Ex. D at 1 (Letter from Hogan to Amalgamated of 2/16/94, at 1).)

Finally, on June 22, 1993, after further contact between plaintiff and defendant, Dr. Mirto mailed copies[2] of Daley's x-rays to Amalgamated. (Levitt Aff., Ex. D at 2 (Letter from Hogan to Amalgamated of 2/16/94, at 2); Levitt Aff., Ex. C. at 7 (Letter from Mirto to Greenberg of 9/21/93, at 2).)

---

1. The exchange of correspondence suggests that the x-rays were not submitted because the defendant refused to pay the $10 fee for having the x-rays professionally duplicated.

2. These copies, however, were not professional copies, but had been made by plaintiff in his offices.

Plaintiff claims to have sent to defendant original assignments from Daley, along with the original claim forms on these as well as concurrent claims,[3] between May and July 1992. (Levitt Aff., Ex. D at 2 (Letter from Hogan to Amalgamated of 2/16/94, at 2).) Despite these assignments forwarded to the defendant and inquiries made to the defendant on the subject by Dr. Mirto on May 14,[4] August 2,[5] August 23,[6] and August 26,[7] 1993, defendant may have paid Daley, the insured, directly on the diagnostic tests at issue in this case, as well as on several other concurrent claims for which assignments had been provided. (Levitt Aff., Ex. D at 2–3 (Letter from Hogan to Amalgamated of 2/16/94, at 2–3); Levitt Aff., Ex. D. at 14 (Letter from Member Service Rep. to Mirto of 8/30/93); Levitt Aff., Ex. D. at 16 (Letter from Mirto to Atkins of 8/26/93).) If so, this would explain the defendant's reluctance to pay plaintiff on the same claim, though not excuse it. Dr. Mirto continued to demand payment from the defendant, (Levitt Aff., Ex. D at 2–3 (Letter from Hogan to Amalgamated of 2/16/94, at 2–3)), and on August 5, 1993, for the first time, defendant submitted this claim to an outside claims examiner, Dr. McLaughlin, for evaluation as to "appropriateness of care." (Levitt Aff., Ex. A (Report of Paul McLaughlin: "Referred: 08/05/93").)

Based on the undated report of Dr. McLaughlin, defendant denied payment to plaintiff in a letter dated August 27, 1993, stating that "our" medical review unit "has determined that the services were not medically necessary." (Levitt Aff., Ex. C. at 5 (Letter from Greenberg to Mirto of 8/27/93).) On September 23, 1993, defendant responded to a letter from plaintiff by again requesting copies of all medical records for the patient for the purposes of a "routine post payment review". (Levitt Aff., Ex. D. at 5 (Letter from Crescenzo to Park Avenue Diagnostic of 9/23/93).) Plaintiff responded by informing defendant that all records had previously

been sent. (Levitt Aff., Ex. D. at 5 (notation on face of Letter from Crescenzo to Park Avenue Diagnostic of 9/23/93).)

On or about September 29, 1993, defendant submitted plaintiff's records to another "outside" consultant for "appeals review," more specifically, for a "[r]eview of medical necessity for all chiropractic services submitted, including Xrays [sic] and diagnostic studies performed." (Levitt Aff. ¶ 13; Levitt Aff., Ex. B at 1 (Peer Review Analysis Memorandum from Richard E. Vincent of 10/13/93).) Dr. Richard E. Vincent, D.C., F.I.C.C., responded with a report dated October 13, 1993, denying the appeal. (Levitt Aff., Ex. B at 1–2 (Peer Review Analysis Memorandum from Richard E. Vincent of 10/13/93).)

On September 17, 1993, plaintiff initiated this action in the Civil Court of the City of New York, Small Claims Part, with service on the defendant on September 29, 1993. On October 20, 1993, the defendant removed the action to this court.

On January 31, 1994, plaintiff was notified that defendant's appeals committee would consider the appeal at its next meeting, and provided plaintiff with an "Appeal Summary" that would be provided to the committee along with various records for its consideration. (Levitt Aff., Ex. C at 1.) Plaintiff responded through his attorney by letter dated February 16, 1994, detailing his version of the facts and criticizing the two reviews of his claim. (Levitt Aff., Ex. D.) By letter dated March 23, 1994, plaintiff was informed by an attorney representing the defendant that:

> After a full and fair review of the materials, and after detailed discussion, the Appeals Committee rejected the appeal. The Trustees determined that two independent medical authorities had reviewed the records and concluded that the tests and chiropractic services rendered should not be paid since they were not medically neces-

---

3. Some of the concurrent claims not at issue in this case involve Kevin Daley's wife, Chikwelu Egbuonu–Daley.

4. Same series of claims, but not exact claims at issue in this case.

5. Same series of claims, but not exact claims at issue in this case.

6. Appears to involve the claims at issue in this case.

7. By letter, involving claims at issue.

sary. Under the terms of the Summary Plan Description (SPD), the Plan does not cover "any charges which are deemed not medically necessary to the diagnosis or treatment of an illness or injury, or cosmetic in nature or primarily for the purpose of medical research or are deemed to be experimental or not medically appropriate" (SPD, page 29).

(Levitt Aff., Ex. F (Letter from Brossman to Hogan of 3/23/94, at 2–3).)

## DISCUSSION

### I. SUMMARY JUDGEMENT STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "In determining whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. General Physics Services Corp.*, 50 F.3d 165, 175 (2nd Cir.1995). However, the non-movant "may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; there must be a genuine issue of material fact." *Moller v. North Shore University Hospital*, 12 F.3d 13, 15 (2d Cir.1993), *quoting City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

### II. STANDARD OF REVIEW UNDER ERISA

The standard of review under ERISA has been held by the Supreme Court to be de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Where the plan "gives the plan administrator discretionary authority to determine eligibility for benefits, the administrator's decision will not be disturbed unless it is arbitrary and capricious." *Murphy v. Int'l Business Machines Corp.*, 23 F.3d 719, 720 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone v. Bruch*, 489 U.S. at 115, 109 S.Ct. at 957 (internal citation omitted).

Here, the language of the Agreement and Declaration of Trust grants the Trustees "full and complete power and authority to determine all matters arising in the ... interpretation and application of the Fund and the Plans," Art. VII, Section 10; this is a sufficient grant of discretion such that the decision of the trustees' will not be disturbed if reasonable. *Firestone v. Bruch*, 489 U.S. at 111, 115, 109 S.Ct. at 954, 956; *Seff v. National Organization of Industrial Trade Unions Insurance Trust Fund*, 781 F.Supp. 1037, 1040 (S.D.N.Y.1992).

Thus, for defendant to succeed on its motion for summary judgment, defendant must establish that the Trustee's denial of benefits to Dr. Mirto was reasonable, which is to say, within its discretion under the arbitrary and capricious standard. If the plaintiff raises any factual issue sufficient to challenge the reasonableness of the decision, defendant's motion must be denied. For these purposes, again, the facts will be construed herein in the light most favorable to the plaintiff.

For the three reasons which follow, we find that defendant has failed to establish, for the purposes of summary judgment, the reasonableness of the Trustees' denial of benefits, and thus deny defendant's motion.

■ First, an appearance of a conflict of interest clouds the board's determination. Normally, where the board of Trustees for a fund is evenly divided between employer representatives and Union representatives, as under the Plan at issue here, and where the two groups' interests are opposed, any conflict involving only one is, essentially, deemed

cancelled by the presence of the other. The facts of this case are unique, however, because the interests of both the employer/administrative trustees, as well as the Union trustees are inclined against this plaintiff.

Because this plaintiff is a medical provider seeking reimbursement for medical treatment provided to an employee/patient who the administrator of the fund apparently already mistakenly paid,[8] the administrator trustees will be inclined against this claim to minimize the appearance of poor management of the fund. The union representatives, without their normal concern for protecting a fellow worker, will exercise greater concern for the integrity of the fund and the need to avoid dual payments. Thus, both sets of Trustees stand contrary to the interest of this claimant, and that conflict must "be weighed in determining whether an abuse of discretion occurred." *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*, 37 F.3d 55, 59 (2d Cir. 1994); *Firestone*, 489 U.S. at 115, 109 S.Ct. at 957.

■ Second, the rationale stated by the Appeals Committee is so vague and conclusory as to call into question defendant's satisfaction of the ERISA statute's requirement that "every employee benefit plan ... provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth *the specific reasons* for such denial, *written*

*in a manner calculated to be understood by the participant. . . .*" 29 U.S.C. § 1133 (emphasis added).[9]

Despite plaintiffs detailed objections to the findings of the reviewers, the specific reason stated by the Appeals Committee consists merely of the following:

> The Trustees determined that two independent medical authorities had reviewed the records and concluded that the tests and chiropractic services rendered should not be paid since they were not medically necessary.

(Levitt Aff., Ex. F (Letter from Brossman to Hogan of 3/23/94, at 2).)

This statement troubles the Court for its brevity and total lack of helpful content. The fact that "[t]he Trustees determined that two independent medical authorities had reviewed the records" is of no moment. The burden on the Committee is to examine the record—here, the conclusions of the medical authorities and the challenges of Dr. Mirto—and, based on that examination, provide its own conclusion and supporting rationale, that is, specific reasons in support of its conclusion. 29 U.S.C. § 1133; *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 693–95 (7th Cir.1992); *see also Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir.1981). That burden is not fulfilled by the mere determination that the records had been previously reviewed by medical authorities.[10]

---

8. The confused record does not make clear whether payment was actually made to the insured on the claims at issue in this action. A letter from the defendant does indicate that payment on the May 20, 1993 and June 10, 1993 services (the diagnostic testings at issue were performed on those dates) would be made "to our member," but nothing in the present record indicates whether payment was ultimately withheld due to the challenge to the claims or the dispute over the correct payee. (Levitt Aff., Ex. D., at 14 (Letter from Member Service Rep. to Mirto of 8/30/93).) In any event, the record before the Appeals Committee (which involved more claims than the two before this Court) clearly identified the risk of double payment on several of the claims before it; those claims at risk could have included the two claims presently before this Court.

9. Likewise, the Plan itself provides that "[t]he decision of the Appeals Committee shall be in

writing and shall include the specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based ..." Restated Agreement and Declaration of Trust, Art. X, Sec. 7.

10. The remainder of the stated rationale provides no additional support. The first sentence is unhelpful, consisting merely of a conclusory statement that the Appeals Committee conducted a full and fair review, and rejected the appeal. As to the fact of rejection of the appeal, the Committee's statement is accepted. As to whether the review was full and fair, while we must accept that the Committee reviewed the materials, we will not on the mere incantation of the words deem the review full and fair. The content of the resultant statement of reasons must likewise support that conclusion.

*Halpin,* 962 F.2d at 693–95; *Miller v. United Welfare Fund,* 851 F.Supp. 71, 74–75 (E.D.N.Y.1994) (denial of benefits was arbitrary and capricious where only evidence in support of denial was prior decision by claims administrator); *Weaver v. Phoenix Home Life Mutual Ins. Co.,* 990 F.2d 154, 159 (4th Cir.1993) (fund violated ERISA guidelines by failing to provide reasons for finding of lack of medical necessity); *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 392 (7th Cir.1983) (denial of benefits was arbitrary and capricious where neither specific reasons nor an explanation of the evidence provided); *White v. Jacobs Engineering Group Long Term Disability Benefit Plan,* 896 F.2d 344, 350 (9th Cir.1990) (notice of denial of benefits found inadequate because included only unsupported conclusion and failed to cite pertinent plan provisions). *But cf. Lamontagne v. Pension Plan of the United Wire, Metal & Machine Pension Fund,* 869 F.2d 153, 158 (2d Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989) (statement that plaintiff "had incurred a break in service" found adequate statement of reason in initial denial of application for disability benefits).[11]

While we are not prepared, at this time, to go as far as the Eighth Circuit has, by

reading the statute and applicable regulations to require the administrator to "set out in opinion form the rationale supporting their decision," *Central States,* 645 F.2d 660, 665, we do find the present statement of reasons insufficient.

■ The third basis for denying defendant's motion for summary judgment is the deficiency of the medical authorities' reports relied upon by the Appeals Committee. A sentence by sentence review of Dr. McLaughlin's report leaves one grasping at straws: a conclusion is stated, but the developed rationale is devoid of meaningful support and contradictory. Likewise in Dr. Vincent's report, a conclusion is stated, but the text of the rationale directly contradicts, at times, the result.[12] These issues are raised in Dr. Mirto's response to each, which were part of the record before the Appeals Committee; however, the Committee never saw fit to address Dr. Mirto's concerns.

In light of these apparent deficiencies and an absence of helpful examination or analysis in the Appeals Committee's "decision," the defendant has failed to show an entitlement to summary judgment.

Furthermore, the second clause of the stated reason conveys more ambiguity than substance. The clause could mean that "The Trustees determined [(1)] that two independent medical authorities had reviewed the records and [(2) that those two independent medical authorities] concluded that the tests and chiropractic services rendered should not be paid since they were not medically necessary." On the other hand, the sentence could be intended to convey two actions by the Trustees, first, a determination "that two independent medical authorities had reviewed the records" and, second, a conclusion "that the tests and chiropractic services rendered should not be paid since they were not medically necessary."

If the clause intends to convey that the Trustees merely determined that *the medical authorities* so concluded, it is as deficient as the determination that "the medical authorities had reviewed the records"—full and fair review requires more. *Halpin,* 962 F.2d at 689, 693–695. If, on the other hand, the clause intends to convey that *the Trustees* so concluded, it is deficient because it is merely a conclusory statement, failing to fulfill the statutory requirement to set forth specific reasons for such a denial. *See id.*

11. *Lamontagne* is distinguishable from the case at bar for at least two reasons. First, the heightened scrutiny appropriate in the case at bar due

to the conflict of interest resulting from the alleged double payment distinguishes this case from *Lamontagne.* The basic level statement of reasons found acceptable in *Lamontagne* is insufficient to satisfy the conflict-induced intensified scrutiny appropriate in this case. Second, there the court was ruling on the sufficiency of notice of an initial denial of claim, whereas in the case at bar the stage of the proceedings is more advanced, the record more developed and contentious, and the lack of specificity involves the final administrative ruling—the ruling that will form the basis of District Court review.

12. Defendant places great emphasis now, as did the Appeals Committee in its denial letter, on its characterization of the two medical reviews as being "independent". These reviews cannot fairly be characterized as independent, however, where the Vincent report explicitly relies upon the McLaughlin report and states, in its concluding paragraph, "I am inclined to support and uphold the decision and opinion of Dr. Paul McLaughlin's prior review for PRA in a report dated 8/5/93." Further, Dr. Vincent's report appears on the stationery of Alicare, Inc., "an affiliate of Amalgamated Life"—thus casting further doubt on his "independence."

**1392**

Accordingly, for the reasons stated above, defendant's motion for summary judgment is denied.

No other motions being before the Court, the parties are directed to file with the Court a Joint Pre–Trial Order, in accordance with this Court's Individual Rules, on or before May 8, 1995, or to contact Chambers for possible referral to a Magistrate Judge.

SO ORDERED.