# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VICTORIA NEYLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-10-368 JRJ |
| | ) | |
| DAVID ZABEL, M.D. and ZABEL | ) | |
| PLASTIC & RECONSTRUCTIVE | ) | |
| SURGERY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: January 17, 2020
Date Decided: October 23, 2020

*Upon Defendants David Zabel, M.D. and Zabel Plastic & Reconstructive Surgery's Motion for Summary Judgment, or Alternatively Motion in Limine to Submit to the Jury Questions of Joint Tortfeasor Liability and Judgment Credit:*
**DENIED.**

*Upon Plaintiff Victoria Neylon's Motion in Limine to Preclude the Introduction of, Reference to, and/or Mention of Plaintiff's Prior Lawsuit and Settlement:*
**GRANTED.**

James P. Hall, Esquire, Phillips Goldman McLaughlin & Hall P.A., 1200 North Broom Street, Wilmington, Delaware 19806, Attorney for Plaintiff.

Gregory S. McKee, Esquire and Katherine J. Sullivan, Esquire (argued), Wharton Levin Ehrmantraut & Klein, P.A., 300 Delaware Avenue, Suite 1110, Wilmington, Delaware 19801, Attorneys for Defendants.

**Jurden, P.J.**

## I.    INTRODUCTION

This medical negligence claim stems from injuries Plaintiff Victoria Neylon allegedly sustained as a result of Defendants David Zabel, M.D. and Zabel Plastic & Reconstructive Surgery's (collectively "Defendants") failure to properly diagnose and treat a severe post-operative infection in Neylon's left leg, ankle, and Achilles tendon, which ultimately resulted in the removal of the Achilles tendon and permanent scarring and disfigurement. Defendants have moved for summary judgment, arguing that they are relieved of any liability due to a release executed in connection with a settlement Neylon reached in a separate personal injury action not involving Defendants.[1] In the alternative, Defendants move *in limine* to submit the question of joint tortfeasor liability to the jury and to limit Neylon's potential recovery in this case based on her previously settled personal injury action.[2] In opposition, Neylon moves *in limine* to exclude all evidence relating to the prior personal injury action, arguing the admission of such evidence is irrelevant and would confuse or mislead the jury.[3]

---

[1] Defendants David Zabel, M.D. and Zabel Plastic & Reconstructive Surgery's Motion for Summary Judgment, or Alternatively Motion in Limine to Submit to the Jury Questions of Joint Tortfeasor Liability and Judgment Credit ("Defs. Mot. Summ. J."), (Trans. ID. 64319113).

[2] *Id.* ¶¶ 21–22.

[3] Plaintiff's Response in Opposition to Defendants David Zabel, M.D. and Zabel Plastic & Reconstructive Surgery's Motion for Summary Judgment, or Alternatively Motion *in Limine* to Submit to the Jury Questions of Joint Tortfeasor Liability and Judgment Credit ("Pl. Resp."), (Trans. ID. 64458358); Plaintiff Victoria Neylon's Motion *in Limine* to Preclude the Introduction of, Reference to, and/or Mention of Plaintiff's Prior Lawsuit and Settlement (Pl. Mot. Lim.), (Trans. ID. 64319398).

For the reasons explained below, Defendants' Motion for Summary Judgment, or Alternatively Motion in Limine to Submit to the Jury Questions of Joint Tortfeasor Liability and Judgment Credit is **DENIED**. Plaintiff Victoria Neylon's Motion *in Limine* to Preclude the Introduction of, Reference to, and/or Mention of Plaintiff's Prior Lawsuit and Settlement is **GRANTED**.

## II. BACKGROUND

On June 18, 2015, a piece of flagstone from Neylon's newly installed patio became dislodged and struck her left heel, causing a laceration and severing her Achilles tendon.[4] On March 3, 2017, Neylon filed a personal injury action (the "PI Action") against the company that constructed the patio–Johnston & Associates Land & Water Creations, Inc. ("Johnston")–to recover damages for the laceration and severed left Achilles tendon proximately caused by Johnston's allegedly negligent construction of the patio.[5] The parties reached a settlement agreement and executed a release (the "Release"), and the PI Action was dismissed in August 2018.[6] The Release expressly excludes all the claims asserted against the Defendants in this medical negligence action.[7] Specifically, the Release states, in pertinent part:

> This Release does not release, discharge, dismiss and/or extinguish claims for past, present, or future medical bills and lost wages, compensation for pain and suffering, disfigurement and permanent

---

[4] Compl. ¶ 7 (hereinafter "Zabel Compl."), (Trans. ID. 61299029).
[5] Defs. Mot. Summ. J., Ex. A ¶ 9 ("Johnston Compl."); *see Nylon v. Johnston & Assoc. Land & Water Creations, Inc.*, C.A. No. 17C-03-446.
[6] Defs. Mot. Summ. J., Ex. C (the "Release").
[7] *Id.* at 1.

3

injuries asserted in the medical malpractice case entitled Victoria Neylon v. David Zabel, M.D. and Zabel Plastic & Reconstructive Surgery: C.A. No. N17C-10-368 JRJ, pending in the Superior Court in and for New Castle, Delaware.[8]

In the Release, Johnston expressly denies any liability and incorporates 10 *Del. C.* § 6304(b).[9]

Neylon underwent surgery by Eric Johnson, M.D. to repair her left Achilles tendon on June 26, 2015.[10] Approximately a month later, she reinjured the tendon.[11] Dr. Johnson recommended she undergo another surgery and referred her to Defendants in order to have Dr. Zabel assist Dr. Johnson with the surgery.[12] On July 30, 2015, Dr. Johnson surgically repaired the tendon, and Dr. Zabel closed the skin at the wound site using Z Plasty Technique.[13] Following this surgery, an infection developed in Neylon's left ankle/left Achilles tendon while she was under the post-operative care of Dr. Zabel.[14] On October 30, 2017, Neylon filed this medical

---

[8] *Id.*

[9] Release at 1–2, 5. The Release states:
> Should a claim be asserted against [Johnston], in the medical malpractice case of Neylon v. David Zabel, et al. C.A. No. N17C-10-368 JRJ, Releasor, Victoria Neylon will fully indemnify and hold harmless Johnston . . . to the extent the trier of fact apportions any liability to Johnston . . . and Releasor, Victoria Neylon, agrees she will only pursue recovery, including collection of any jury verdict and/or Order and/or Judgment, against David Zabel, MD and Zabel Plastic Reconstruction Surgery.

[10] Zabel Compl. ¶ 9.

[11] *Id.* ¶ 10

[12] *Id.* ¶ 11. The surgical plan was for Dr. Johnson to repair the tendon and Dr. Zabel to suture the left ankle wound site.

[13] *Id.* ¶ 14.

[14] Zabel Compl. ¶ 16.

4

negligence action to recover damages for the injuries she sustained as a proximate result of Defendants' alleged medical negligence.[15]

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[16] The moving party bears the burden of establishing the non-existence of material issues of fact,[17] and the Court must view the record in the light most favorable to the non-moving party.[18]

#### 2. Accord & Satisfaction/Double Recovery

Defendants argue that summary judgment is appropriate because the Release "fully satisfies" Neylon's damages stemming from the Achilles injury and thus is tantamount to an accord and satisfaction and an impermissible double recovery.[19] The Court disagrees. A party asserting an accord and satisfaction must show:

(1) a bona fide dispute existed as to the amount owed that was based on mutual good faith;
(2) the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and

---

[15] *Id.* ¶ 37.
[16] Super. Ct. Civ. R. 56(c).
[17] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[18] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[19] Defs. Mot. Summ. J. ¶¶ 3, 18.

5

(3) the creditor agreed to accept the payment in full satisfaction of the debt.[20]

"An accord and satisfaction is a bilateral contract."[21] A bilateral contract consists of mutual promises made in exchange for each other by two contracting parties.[22]

Defendants have not and cannot satisfy these elements, nor have they demonstrated that they are parties to the contract at issue. The Release establishes a contractual relationship between Neylon and Johnston–not Defendants. In fact, Defendants are expressly excluded from the Release, and Neylon expressly reserved her rights against them.[23] Defendants cannot stand in the shoes of the settling party–Johnston–and claim that the Release relieves them of any debt or liability to Neylon.

Defendants cannot rely on *Hennegan v. Cardiology Consultants, P.A.*[24] to support their argument that the Release is an accord and satisfaction of Neylon's claims. *Hennegan* stands for the proposition that a plaintiff can pursue only one wrongful death action for the death of another pursuant to Delaware's Wrongful Death Act.[25] In *Hennegan*, the Court found that the plaintiff had already exhausted

---

[20] *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997).
[21] *Id.* at 1070.
[22] *Kysor Indus. Corp. v. Margaux, Inc.*, 674 A.2d 889, 895 (Del. Super. Ct. 1996) (citing Williston on Contracts § 1.23).
[23] Release at 1.
[24] 2008 WL 2943397 (Del. Super. Ct. July 15, 2008), *aff'd*, 985 A.2d 390 (Del. 2009).
[25] *Id.* at *2 ("[T]he Wrongful Death Act is to allow the pursuit of recovery of damages resulting from the death of another person, but to allow such pursuit only one time. The statutes create but one cause of action.").

6

her one statutory opportunity to pursue a wrongful death action in connection with the decedent's death and could not circumvent the consequences of the statute by pursuing a second wrongful death action against the defendants discharged in the settlement release.[26]

Defendants assert that Johnston considered Neylon's subsequent injuries allegedly caused by Defendants in the settlement negotiations that resulted in the Release.[27] For this reason, Defendants argue the settlement amount includes damages for all of Neylon's injuries, including those allegedly caused by Defendants.[28] There is no support in the record for this assertion. Parties may agree to settle a matter for a host of reasons unassociated with the actual value of the plaintiff's claims.[29] Such factors include, among other things, limits on insurance coverage, the existence of an umbrella insurance policy, the emotional toll of litigation, and the benefit of a prompt monetary settlement.[30] Defendants are asking the Court, in the context of a summary judgment motion, to engage in speculation. This the Court will not do.

---

[26] *Id.* at *4. The release in *Hennegan* unequivocally discharged and released the defendants from whom the plaintiffs were seeking recovery. Also, the medically negligent acts in both lawsuits at issue in *Hennegan* were alleged to have combined to cause one injury–the decedent's death.

[27] Defs. Mot. Summ. J. ¶¶ 18–19.

[28] Id.

[29] *See Trout v. Milton S. Hershey Med. Ctr.*, 572 F.Supp. 2d 591, 597 (M.D. Pa. 2008).

[30] *Id.*

Even assuming *arguendo* that Johnston did consider the aggravation of Neylon's injuries caused by Defendants' alleged negligence, Defendants are not relieved of liability. The fact that a plaintiff's aggravation of injuries is considered in a settlement negotiated with the original tortfeasor does not create a presumption that the plaintiff's claims against the subsequent tortfeasor have been satisfied; nor does it relieve the subsequent tortfeasor of liability.[31]

In *Moller v. North Shore University Hospital*, the plaintiff filed a medical malpractice action against a physician and a hospital, seeking damages for negligent treatment and care of his injuries following a motor vehicle accident.[32] The plaintiff filed a separate action against the driver in the accident, which later settled.[33] The defendants in the medical malpractice action moved for summary judgment, arguing that the settling driver considered the plaintiff's aggravated injuries from the medical malpractice claim as well as the original injuries in reaching its settlement, and therefore the prior settlement constituted a satisfaction of all the plaintiff's claims, including the aggravation claims.[34] The district court held that the defendant physician and hospital were relieved of all liability because the settling driver

---

[31] *See Moller v. N. Shore Univ. Hosp.*, 12 F.3d 13, 14 (2d Cir. 1993).
[32] *Id.*
[33] *Id.* at 15 (holding that the settling defendants were 60% responsible for the plaintiff's injuries, and therefore, that they were joint tortfeasors with the non-settling defendants).
[34] *Id.*

8

considered the aggravation of the plaintiff's injuries.[35] On appeal, the Second Circuit reversed, holding that the fact that the plaintiff's aggravated injuries were considered in the settlement with the driver did not support a conclusion that the plaintiff's medical malpractice claims were satisfied, particularly when the settlement did not expressly discharge the defendants and the full amount of damages had not been determined.[36] The circuit court concluded that consideration of the plaintiff's aggravated injuries in the prior settlement did not relieve the defendant physician and hospital of liability in the subsequent medical malpractice action.[37]

Viewing the record in the light most favorable to the non-moving party, the Court finds the Release did not relieve Defendants of liability for their actions. The trier of fact must determine whether Defendants' allegedly negligent medical care proximately caused injuries to Neylon separate from those injuries caused by Johnston.[38] Consequently, summary judgment is inappropriate because there are

---

[35] *Moller*, 12 F.3d at 15. During the hearing, the driver's insurance company testified that it weighed the extent of the plaintiff's injuries and present disabilities when considering settlement. *Id.*

[36] *Id.* at 14.

[37] *Id.* at 14, 16. Under New York's General Obligations Law, any award of damages against the defendant physician and hospital required a set off to reflect the plaintiff's prior settlement because the settling driver was determined to be a joint tortfeasor with the physician and hospital. *Id.*

[38] *See Voyles v. Corwin*, 441 A.2d 381 (Pa. Super. Ct. 1982) (holding that it is a question for jury to determine whether the severity of plaintiff's injuries could have been avoided if the defendant physicians performed proper medical care, and if the jury finds that the injuries would not have been so severe, then the defendant physicians would be liable only for the injuries attributable to their medical negligence).

9

genuine issues of material fact in dispute. Therefore Defendants' Motion for Summary Judgment is **DENIED.**

### B. Parties' Motions *in Limine*

#### 1. Introduction

In the alternative, Defendants move *in limine* to submit the questions of joint tortfeasor liability and judgment credit to the jury.[39] Defendants argue Johnston and Defendants are joint tortfeasors and the jury must determine joint tortfeasor liability between them.[40] In addition, Defendants claim they are entitled to a judgment credit against Neylon's settlement with Johnston.[41]

Further, Defendants argue that the jury should be allowed to consider the following facts: (1) Neylon filed the PI Action for the same injuries asserted against Defendants, (2) Neylon received a settlement for those claimed injuries, and (3) the amount of the settlement in the PI Action.[42] Neylon also moves *in Limine*, seeking to exclude all evidence relating to the PI Action, including the Release, arguing that the evidence is irrelevant to the present action because Defendants and Johnston are not joint tortfeasors; therefore, Defendants are not entitled to a set off, and admission of such evidence would confuse and/or mislead the jury.[43]

---

[39] Defs. Mot. Summ. J.
[40] Defs. Mot. Summ. J. ¶ 21.
[41] *Id.* ¶ 23.
[42] *Id.* ¶ 22.
[43] Pl. Mot. Lim. ¶ 8.

10

The Court will first address whether the question of joint tortfeasor liability should be submitted to the jury and whether Defendants are entitled to a judgment credit.

### 2. Joint Tortfeasor Liability

Delaware Uniform Contribution Law defines "joint tortfeasor" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."[44] In *Weber v. Medical Center of Delaware, Inc.*, the Court held that a tortfeasor who causes injuries to an individual and a physician who subsequently commits malpractice treating those injuries are not joint tortfeasors for purposes of the Uniform Contribution Among Tortfeasors Act.[45] In *Weber*, the plaintiffs sued the Medical Center of Delaware and Dr. Mansoory for negligent treatment and care of the injuries that Mr. Weber sustained in a motor vehicle accident.[46] Dr. Mansoory attempted to file a third-party complaint against the driver of the vehicle that struck Mr. Weber so that the jury could determine joint tortfeasor liability among the driver and Dr. Mansoory.[47] The Court in *Weber* found two Pennsylvania Superior Court cases persuasive in determining whether the driver and the defendants were joint

---

[44] 10 *Del. C.* § 6301.
[45] *Weber v. Medical Center of Delaware, Inc.*, 1994 WL 233925 (Del. Super. Ct. Apr. 26, 1994).
[46] *Id.* at *1.
[47] *Id.* The plaintiffs originally sued the driver alleging negligent operation of a motor vehicle. The lawsuit was later settled and a released was executed. Importantly, the release did not contain an admission of liability by the driver nor did it incorporate the language of 10 *Del. C.* § 6304(b).

11

tortfeasors.[48] In *Lasprogata v. Qualls*, the Pennsylvania Superior Court held that a tortfeasor who originally causes an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors.[49] There, the court explained:

> The acts of the original wrongdoer and the negligent physician are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff. While they are two active tortfeasors, they are not actually acting 'jointly' when using that term in the strict sense.[50]

In *Harka v. Nabati*, the Pennsylvania Superior Court, relying on *Lasprogata*, held that the original tortfeasor and the allegedly negligent physician were not joint tortfeasors because: (1) they owed different duties to the injured person, (2) the evidence to be used against each other was clearly different, (3) there was little identity of facts as to time or place of injury, (4) neither had the opportunity to guard against the other's acts, and (5) while similar allegations were set forth in the complaints, the nature of the actions against the tortfeasors were unquestionably different.[51] Relying on these cases, the Court in *Weber* held that the driver and the defendants were not joint tortfeasors because the time, place, and nature of the injuries caused by the driver differed from those allegedly caused by the

---

[48] *Weber*, 1994 WL 233925, at *2, *see Lasprogata v. Qualls*, 397 A.2d 803 (Pa. Super. Ct. 1979), *Harka v. Nabati*, 487 A.2d 432 (Pa. Super. Ct. 1985).
[49] *Lasprogata*, 397 A.2d at 805 (emphasis added and citations omitted).
[50] *Id.*
[51] *Harka*, 487 A.2d at 434.

defendants.[52] The Court found that the plaintiff could recover for two separate injuries and that the defendants were responsible for those injuries proximately caused by their alleged negligent conduct.[53]

Similarly, in *Voyles v. Corwin*,[54] the plaintiff sustained severe injuries to his leg when his motorcycle collided with a motor vehicle.[55] After the accident, he was treated by the defendant physicians, and his leg was eventually amputated.[56] The plaintiff settled his claim against the negligent driver and signed a release.[57] Later, the plaintiff sued his treating physicians.[58] The physicians argued the driver was a joint tortfeasor.[59] The Pennsylvania Superior Court disagreed, holding that the physicians could be held liable for the portion of the injury that resulted from their negligence.[60] The Pennsylvania Superior Court explained:

> It may be, as the physicians suggest, that the loss of [the plaintiff's] leg was an unavoidable consequence of the harm [the defendant motorist] did him, no matter what the physicians did or should have done. Should a jury so find, the physicians would not be liable to [the plaintiff]. It

---

[52] *Weber*, 1994 WL 233925, at *2. The Court in *Weber* recognized that a plaintiff could, theoretically, recover from two tortfeasors for the same injury. ("Theoretically, this could occur because plaintiff has previously settled with [the original tortfeasor], which settlement could have included a sum to compensate plaintiff for the original injuries and whatever new or additional injuries resulted from the allegedly negligent medical care.").

[53] *Id.*

[54] *Voyles v. Corwin*, 441 A.2d 381 (Pa. Super. Ct. 1982).

[55] *Id.* at 382.

[56] *Id.*

[57] *Id.* The release stated the sums paid were "in full satisfaction and extinguishment of all claims . . . and causes of action arising out of any damage or loss, direct or indirect, of bodily injuries sustained" as a result of the motor vehicle accident.

[58] *Voyles*, 441 A.2d at 382.

[59] *Id.*

[60] *Id.* at 383.

may also be that proper medical care would have resulted in [the plaintiff's] injuries not being so severe. Should a jury so find, the physicians would be liable to [the plaintiff] for that portion — *but only that portion* — of [the plaintiff's] injuries attributable to their negligence.[61]

In the case, *sub judice*, Defendants and Johnston are not joint tortfeasors. The medical negligence claim against Defendants differs legally and factually from the personal injury action against Johnston.[62] Defendants, a licensed physician and a medical center, and Johnston, a landscape design company, owed different duties to Neylon. The time, place, and nature of the injuries allegedly caused by Defendants differ from those allegedly caused by Johnston. Defendants argue that *Weber* is inapplicable to the facts in this case because Neylon presented the same evidence against Johnston and Defendants and, therefore, Neylon seeks to recover for the same injury. The Court disagrees. There is no question that the injuries alleged against Defendants are tangentially related to the injury that formed the basis of the settlement with Johnston.[63] It does not follow from this, however, that Neylon sought to recover for the same injury from both Johnston and Defendants.

As Neylon asserts, the prior action against Johnston alleged an injury resulting in a laceration in her left ankle and severance of her left Achilles tendon.[64] In the

---

[61] *Id.*

[62] *Compare* Zabel Compl., *with* Johnston Compl.

[63] Plaintiff readily concedes this point. D.I. 136 at 8.

[64] D.I. 136 at 8.

present action, Neylon seeks to recover for an infection in her left ankle, left leg, and left Achilles tendon, necessitating the removal of her Achilles tendon, all of which allegedly resulted from the surgery and post-operative care that Defendants performed to treat the initial injury, not from the initial injury itself. Neylon did not seek to recover for the "loss of her left Achilles tendon" in the PI Action against Johnston, as she does now from Defendants.[65] Defendants offer no support from the record for their argument that Neylon is attempting to recover for the same injury, aside from noting that Neylon used three of the same expert reports as evidence in both actions. This assertion falls markedly short of showing that Neylon made identical allegations against Johnston and Defendants.

In addition, Neylon's burden of proving damages here is different than it was in the PI Action. Here, Neylon must prove that the extent of her injuries would not have been so severe had Defendants adhered to the proper standard of care. Accordingly, the Court will not submit the question of joint tortfeasor liability to the jury.

---

[65] *Id.*, at 8 n.23.

### 3.    Judgment Credit / Collateral Source Rule

Because Johnston and Defendants are not joint tortfeasors, the Delaware Uniform Contribution Law does not apply.[66] Therefore, the Defendants are not entitled to a *pro tanto* credit.[67]

Contrary to Defendants' argument, the collateral source rule is applicable here. "The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and no right to benefit from, monies received by the injured person from sources unconnected with the [tort-feasor]."[68] As the Delaware Supreme Court decided in *Medical Center of Delaware, Inc. v. Mullins*, "the collateral source rule provides that 'a tortfeasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an *independent source*.'"[69] The Delaware Supreme Court held that, under the collateral source rule, in the absence of a determination that the settling defendant is a joint tortfeasor, the non-settling defendant has no right to a credit because the payment by the settling

---

[66] The Delaware Uniform Contribution Law is applicable to joint tortfeasors only. *See* 10 *Del. C.* § 3404(a); *see also Med. Ctr. of Del. v. Mullins*, 637 A.2d 6, 7 (Del. 1994) ("Under the Delaware Uniform Contribution Law, in all cases where a settling 'joint tort-feasor' has been released from liability to make contribution to a judgment, any remaining non-settling joint tort-feasors are entitled to a reduction of the judgment by the greater of the amount of the consideration paid for the release or the *pro rata* share of fault attributed to the settling tort-feasor who was released.").

[67] *Id.* at 10 (citing *Yarrington v. Thornburg*, 205 A.2d 1 (Del. 1964)).

[68] *Id.* (alterations in original and internal quotations omitted) (quoting *Yarrington*, 205 A.2d at 2).

[69] *Id.* (quoting *Yarrington*, 205 A.2d at 2).

defendant constitutes compensation from an independent source.[70]    Here, the payment by Johnston to Neylon constitutes compensation from an independent source, so, pursuant to the collateral source rule, Defendants are not entitled to a credit.

### 4.    Exclusion of Evidence

Because this Court finds that Defendants and Johnston are not joint tortfeasors, and the collateral source rule does apply to this action, Neylon's Motion *in Limine* to exclude all evidence relating to the PI Action, including the Release, is granted.  Defendants rely on *Evans v. John Crane, Inc.*,[71] for the proposition that evidence of the PI Action must be allowed in the present action because Defendants share joint tortfeasor status with Johnston.[72]  The *Evans* decision makes clear, however, that when the collateral source rule does apply, evidence regarding payment made to a plaintiff from collateral sources is generally prohibited due to the potential for prejudice.[73]  For the reasons stated, because the collateral source rule applies to this action, evidence regarding Neylon's settlement with Johnston will be excluded.

---

[70] *Id.* ("[T]he collateral source rule resolves what may be competing equities in favor of the innocent injured plaintiff receiving a windfall, rather than an admitted or adjudged tort-feasor bearing less than the full cost of his or her negligent conduct.").

[71] 2019 WL 5457101 (D. Del. Oct. 24, 2019).

[72] In *Evans v. John Crane, Inc.*, the court denied plaintiff's motion to exclude evidence of a prior action and settlement because the defendant shared joint tortfeasor status with the settling third-party.

[73] *Evans*, 2019 WL 5457101, at *1.

## IV. CONCLUSION

For the forgoing reasons, the Court finds that: (1) the Release does not discharge and/or relieve Defendants of liability for the claims asserted against them in this medical negligence action, (2) Defendants and Johnston are not joint tortfeasors, and (3) Defendants do not have a right to a judgment credit because the payment by Johnston to Neylon is inadmissible under the collateral source rule.

Consequently, Defendants' Motion for Summary Judgment, or Alternatively Motion *in Limine* to Submit to the Jury Questions of Joint Tortfeasor Liability and Judgment Credit is **DENIED**. Plaintiff's Motion *in Limine* to Preclude the Introduction of, Reference to, and/or Mention of Plaintiff's Prior Lawsuit and Settlement is **GRANTED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

cc: Prothonotary

18